**Roslyn Henry OLDHAM, Appellant,**

v.

**The STATE of Texas.**

**No. 1350–94.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 30, 1998.

---

**33.** *Ante* at 342 (quoting *Transportation Ins. Co. v.*     *Moriel,* 879 S.W.2d 10, 30 (Tex.1994)).

## OPINION ON STATE'S MOTION FOR REHEARING

WOMACK, Judge, delivered the opinion of the Court, in which McCORMICK, Presiding Judge, and MANSFIELD, KELLER and HOLLAND, Judges, joined.

The State petitioned this Court for review of the Court of Appeals' opinion, *Oldham v. State,* 889 S.W.2d 461 (Tex.App.—Houston [14th Dist.] 1994), which held that the appellant was denied counsel at a critical stage of the proceedings, and which abated the appeal and remanded the cause to the trial court to allow the appellant to file an out-of-time motion for a new trial. On original submission, this Court dismissed the State's petition for discretionary review as improvidently granted. We then granted the State's motion for rehearing, on which this opinion is issued. We shall reverse.

The appellant was represented by retained counsel at her trial for forgery committed on January 9, 1989, in violation of Texas Penal Code § 32.32. On January 13, 1992, she was found guilty by a jury. On that same date, the trial court sentenced her to three years confinement. The appellant filed a *pro se* notice of appeal and indigency on February 10, 1992. The next day the appeal was assigned to the Fourteenth Court of Appeals, with a notation on the letter of assignment from the trial court that the attorney of record on appeal was "to be determined." On March 16, 1992, the trial court found the appellant indigent and appointed appellate counsel.

On March 20, 1992, the appellant, through her appellate counsel, filed a motion in the Court of Appeals to abate the appeal. She requested that the court set aside the sentence, start the appellate timetable anew, and remand the case to the trial court to allow the appellant leave to file a motion for new trial, on the ground that she was denied the constitutional right to counsel during a critical stage of the appellate proceedings, namely the time period within which her motion for new trial had to be filed. The Court of Appeals denied this motion on March 26, 1992. On April 9, 1992, the appellant filed a second motion to abate the appeal on the same ground. The Court of Appeals overruled that motion on April 16, 1992. The appellant urged fifteen points of error to the Court of Appeals, four of which dealt with the same subject matter as her motions to abate.

On September 29, 1994, the Court of Appeals issued its opinion, *Oldham v. State*, 889 S.W.2d 461 (Tex.App.—Houston [14th Dist.] 1994), in which it determined that the appellant had been denied her Sixth Amendment right to counsel. The Court of Appeals abated the appeal, set aside the notice of appeal, and remanded the cause to the trial court to allow the appellant to file her motion for new trial and the orderly conduct of subsequent post-trial proceedings. *Id.* at 463.

The Court of Appeals began its analysis by stating, "Texas Rule of Appellate Procedure 31(a)(1) requires that if a motion for new trial is to be filed, it must be done within thirty days of sentencing. *See* Tex.R.App.P. 31(a)(1). However, Texas Rule of Appellate Procedure 2(b) allows this Court to extend the thirty day deadline for 'good cause' shown. *See* Tex.R.App.P. 2(b)." *Oldham v.*

*State*, 889 S.W.2d 461, 462 (Tex.App.—Houston [14th Dist.] 1994).

The appellant claimed that she had been denied her right to counsel in violation of the Federal Constitution, the State Constitution, the Code of Criminal Procedure, and various cases interpreting them. The Court of Appeals found a constitutional violation, and it relied on Rule 2(b) [1] as authority to set aside the sentence and notice of appeal, abate the appeal, and allow the appellant to file her motion for a new trial. The Court of Appeals reasoned that Rule 2(b) could be used to "suspend" Rule 31(a)(1) which required that a motion for a new trial be filed within 30 days after sentencing. In essence, the Court of Appeals used Rule 2(b) to extend the time limit for the filing of the appellant's motion for a new trial some two years and eight months, this being the time from the appellant's sentencing to the date of the Court of Appeals' decision.

■ We believe the Court of Appeals was in error to rely on Rule 2(b) as a mechanism to extend the time limits for the filing of a motion for a new trial imposed by Rule 31(a)(1).

Rule 2 of the Texas Rules of Appellate Procedure [2] provides:

(a) Relationship to Jurisdiction. These rules shall not be construed to extend or limit the jurisdiction of the courts of appeals, the Court of Criminal Appeals or the Supreme Court as established by law.

(b) Suspension of Rules in Criminal Matters. Except as otherwise provided in these rules, in the interest of expediting a decision or for other good cause shown, a court of appeals or the Court of Criminal

---

**1.** All references to Rules are the Texas Rules of Appellate Procedure in effect at the time of the appellant's trial and direct appeal. By Order dated March 20, 1997, this Court adopted a revised Texas Rules of Appellate Procedure, effective September 1, 1997. Final Approval of Revisions to the Texas Rules of Appellate Procedure, 948–949 S.W.2d (Texas Cases) XLII (Aug. 15, 1997).

**2.** The new rules, effective September 1, 1997, provide:

Rule 2. Suspension of Rules. On a party's motion or on its own initiative an appellate

court may—to expedite a decision or for other good cause shown—suspend a rule's operation in a particular case and order a different procedure; but a court must not construe this rule to suspend any provision of the Code of Criminal Procedure or to alter the time for perfecting an appeal in a civil case.

Comment to the 1997 change reads: "Former subdivision (a) regarding appellate court jurisdiction is deleted. The power to suspend rules is extended to civil cases. Other nonsubstantive changes are made."

Appeals may suspend requirements and provisions of any rule in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction. Provided, however, that nothing in this rule shall be construed to allow any court to suspend requirements or provisions of the Code of Criminal Procedure.

The courts of appeals have considered and used Rule 2(b) in a variety of cases. *See, e.g., Callis v. State*, 756 S.W.2d 826 (Tex. App.—Houston [1st Dist.] 1988) (using Rule 2(b) to abate appeal and remand to allow untimely filing of a motion for new trial upon finding the appellant was denied counsel during time limit to file motion for a new trial); *McMillan v. State*, 769 S.W.2d 675 (Tex. App.—Dallas 1989) (using Rule 2(b) to suspend time limits to file a notice of appeal after case remanded for a hearing on a motion for a new trial); *Boulos v. State*, 775 S.W.2d 8 (Tex.App.—Houston [1st Dist.] 1989) (using Rule 2(b) to allow untimely motion for extension of time to file late notice of appeal); *Torres v. State*, 804 S.W.2d 918 (Tex.App.—El Paso 1990) (holding that use of Rule 2(b) to abate the appeal and return the case to the trial court for a hearing on the appellant's ineffective assistance claim would violate the Rule 2(a) prohibition against enlarging jurisdiction); *Bowler v. State*, 822 S.W.2d 334 (Tex.App.—San Antonio 1992) (finding no good cause shown under Rule 2(b) to remand for an evidentiary hearing on an ineffective assistance claim because such a claim is cognizable by habeas corpus); *Harris v. State*, 827 S.W.2d 442 (Tex.App.—San Antonio 1992), and *Harris v. State*, 818 S.W.2d 231 (Tex.App.—San Antonio 1991) (using Rule 2(b) to abate the appeal and remand for an out-of-time motion for new trial based on newly discovered evidence); *State ex rel. Holmes v. Shaver*, 824 S.W.2d 285 (Tex.App.—Texarkana 1992) (using Rule 2(b) to abate the appeal and remand to the trial court to conduct a rehearing on out-of-time motions for new trial); *Sanchez v. State*, 885 S.W.2d 444 (Tex.App.—Corpus Christi 1994) (using Rule 2(b) to allow untimely motion for extension of time to file late notice of appeal); *Hilton v. State*, 870 S.W.2d 209 (Tex.App.—Beaumont 1994) (abating appeal

and remanding to the trial court for a hearing to allow the appellant to attempt to establish good cause under Rule 2(b) to allow an out-of-time motion for new trial); *Tuffiash v. State*, 878 S.W.2d 197 (Tex.App.—San Antonio 1994) (using Rule 2(b) to abate the appeal and remand to the trial court for an out-of-time motion for a new trial based on newly discovered evidence, conceding that such claim is also cognizable in habeas); *Broadnax v. State*, 900 S.W.2d 452 (Tex. App.—Texarkana 1995) (refusing to use Rule 2(b) to allow untimely notice of appeal); *Garza v. State*, 904 S.W.2d 877 (Tex.App.—Corpus Christi 1995) (refusing to use Rule 2(b) to allow trial court's untimely granting of a new trial to become valid retrospectively); *Boyette v. State*, 908 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1995) (using Rule 2(b) to abate appeal and remand to allow untimely filing of a motion for new trial upon finding the appellant was denied counsel during time limit to file motion for a new trial); *Cooper v. State*, 917 S.W.2d 474 (Tex.App.—Fort Worth 1996) (refusing to use Rule 2(b) to allow untimely notice of appeal); *Crowell v. State*, 949 S.W.2d 37 (Tex.App.—San Antonio 1997) (refusing to use Rule 2(b) to allow untimely hearing on motion for a new trial claiming ineffective assistance of counsel because such claim is cognizable in habeas corpus); *Burnett v. State*, 959 S.W.2d 652 (Tex. App.—Houston [1st Dist.] 1997) (refusing to use Rule 2(b) to allow remand for an out-of-time motion for a new trial because record did not support claim of denial of counsel).

This Court has also had occasion to use and to comment on the role of Rule 2(b) in the appellate process.

Less than two months after we adopted Rule 2(b), this Court utilized it to grant out-of-time discretionary review on the Court's own motion in *Davis v. State*, 721 S.W.2d 857 (Tex.Cr.App.1986), and ultimately remanded the case to the Court of Appeals. In a dissent critical of the Court's actions, calling the majority a "loose cannon on deck," Judge Clinton stated:

As I do, the Austin Court will surely wonder what is the "good cause shown," and since presumably it must invite and afford time for the parties to brief the *Adams*

question, the Austin Court would be justified in believing that to review the record again for prejudice to preparation of a defense is certainly *not* "in the interest of expediting a decision" in this cause.

*Id.* at 858 (Clinton, J., dissenting).

In *Keeton v. State,* 724 S.W.2d 58 (Tex.Cr. App.1987), this Court used Rule 2(b) to prohibit entertainment of a motion for rehearing in the case. In *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987), we used Rule 2(b) to grant rehearing in the case on the Court's own motion. *Rose* represented the last time we endorsed use of Rule 2(b) to suspend the Rules of Appellate Procedure.

In *State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47 (Tex.Cr.App.1987), the trial court orally granted the defendant's motion for a new trial within the time limits to rule on it, but did not sign the order granting the motion until five days after the time limit had expired. We held that motion had been overruled by operation of law and the order granting the motion was a nullity. The respondent, the trial judge below, requested that this Court use Rule 2(b) to suspend the rules, which we declined to do, stating:

Suspension of rules of appellate procedure by this Court is a serious matter, not to be undertaken lightly. Rule 31(e), supra, serves the vital function of promoting certainty regarding the finality of a judgment, in a case in which a motion for new trial has been filed. Under Rule 31(e)(3), respondent lost jurisdiction to rule on the motion when it was overruled by operation of law. Respondent has failed to show good cause why this Court should suspend this rule, other than to remedy his own tardiness. For these reasons, we decline to suspend the rules pursuant to Rule 2(b), supra, as suggested by respondent.

*Id.* at 49.

In *Tallant v. State,* 742 S.W.2d 292 (Tex. Cr.App.1987), in refusing to permit discretionary review on a ground that was not first presented to the Court of Appeals for review, we stated: "There was and is a provision for suspending rules of appellate procedure. See former rule 4 and Tex.R.App.Pro. Rule 2(b). There is none for ignoring, disregard-

ing or violating them on the part of any party or appellate court, especially this one. Transgressions of rules of appellate procedure which this Court has insisted be followed cannot be summarily dismissed." *Id.* at 294. *See also Rochelle v. State,* 791 S.W.2d 121 (Tex.Cr.App.1990) (refusing to use Rule 2(b) to allow discretionary review on a ground not addressed by the Court of Appeals). And in *Ex parte Herrera,* 860 S.W.2d 106 (Tex.Cr.App.1993), we refused to use Rule 2(b) to allow an out-of-time motion for a new trial based on newly discovered evidence.

In addition to our own use of Rule 2(b), we have had occasion to consider use of the Rule by the courts of appeals.

The San Antonio Court of Appeals in *Garza v. State* sought to withdraw its opinion and issue a new opinion after a petition for discretionary review had been filed and the time limit for substituting its opinion had expired. *Garza v. State,* 896 S.W.2d 192 (Tex.Cr.App.1995). *See* Tex.R.App.P. 101. The appellant urged that Rule 2(b) permitted the suspension of Rule 101 by the Court of Appeals, although the Court of Appeals had not specifically relied on Rule 2(b) for its actions. This Court rejected the argument and noted that Rule 2(b) could not be used to extend the Court of Appeals jurisdiction. "The time limits set forth in the Rules of Appellate Procedure are not discretionary.... If appellate courts were able to suspend the timetables, to which they are held to comply, there would be nothing this Court could do to promote the timeliness of the appellate process and the very purpose of the Rules would be undermined." *Id.* at 194.

In *Olivo v. State,* 918 S.W.2d 519 (Tex.Cr. App.1996), we rejected the appellant's argument that Rule 2(b) could be used to allow an untimely motion for extension of time to file a late notice of appeal, holding that the Court of Appeals never obtained jurisdiction over the appeal to do anything but dismiss it for lack of jurisdiction. We recognized, however, that the constraint found in Rule 2(a) would not have prevented the Court of Appeals from using Rule 2(b) in the manner suggested, but that the court was powerless to act since a timely appeal was never per-

fected. *Id.* at 523. *See also Harris v. State,* 818 S.W.2d 231, 232–33 (Tex.App.—San Antonio 1991) (Rule 2(a) does not prevent use of Rule 2(b) on this issue).

In *State v. Adams,* 930 S.W.2d 88 (Tex.Cr. App.1996), the Texarkana Court of Appeals used Rule 2(b) to suspend the time limits in Rule 31(a)(1) and allow out-of-time motions for new trial based on newly discovered evidence. *See State ex rel. Holmes v. Shaver,* 824 S.W.2d 285 (Tex.App.—Texarkana 1992). Upon the granting of the motions by the trial court, the State appealed arguing that Rule 2(b) did not permit such action. The First Court of Appeals, in Houston, was assigned the case, but refused to address the argument, stating that the Texarkana Court had concluded that the abatement and remand was proper. On the State's petition for discretionary review, we reversed and remanded the case instructing the First Court to address the issue.[3] While we did not reach a conclusion on the issue presented in the case, we directed the Court of Appeals' attention to *State v. Bates,* 889 S.W.2d 306 (Tex.Cr. App.1994), and *Garza v. State,* 896 S.W.2d 192 (Tex.Cr.App.1995), for guidance.

Most recently, in *State v. Garza,* 931 S.W.2d 560 (Tex.Cr.App.1996), this Court was presented the novel situation where the trial court erroneously granted a motion for a new trial which had been overruled by operation of law, and upon conviction in the second trial, the defendant, receiving a greater sentence, appealed contending that the second sentence was void, since the trial court was not authorized to grant the new trial. The Court of Appeals agreed, and set aside the second sentence, reinstating the first. On petition for discretionary review, the State urged that the Court of Appeals erred by refusing to use Rule 2(b) to validate the trial court's order granting the new trial. We disagreed, stating:

> Finally, and most importantly, in our view Rule 2(b) does not authorize the retroactive suspension of rules governing events that have already occurred at the trial level before the record has been conveyed

to the appellate court. True, on its face the rule allows suspension of provisions of "any" rule, even those governing motion for new trial. Nevertheless, the suspension of a rule is permitted only in accordance with the conditions enumerated in the rule, *viz:* "in the interest of *expediting a decision* or for *other* good cause shown[.]" This language signifies that what Rule 2(b) contemplates in the way of "good cause" is one of the relatively rare situations in which suspending a rule, rather than following it, will actually facilitate processing the case through the appellate court, by "expediting a decision" or otherwise. It does not authorize courts of appeals to reach back, after the appeal has been perfected and the record filed, and alter the course of events at the trial court level, as the State asked the court of appeals to do here.

*Id.* at 563.

In the case at hand, the Court of Appeals had been properly vested with jurisdiction to hear the appeal, and therefore it was bound by and had the authority to act pursuant to the Rules of Appellate Procedure, including Rule 2(b). Nothing in Rule 2(a) prevented the Court of Appeals from using Rule 2(b) in the manner attempted. *See Olivo v. State,* 918 S.W.2d 519, 523 (Tex.Cr.App.1996).

However, we think it is clear that using Rule 2(b) to "suspend" or enlarge appellate time limits which regulate the orderly and timely process of moving a case from trial to finality of conviction is overstepping the contemplated uses of Rule 2(b). In *State ex rel. Cobb v. Godfrey,* we stated that Rule 31 serves the vital function of promoting certainty regarding the finality of a judgment; in *Tallant v. State,* we stated that the Rules may not be disregarded; in *Garza v. State,* we stated that the time limits in the Rules are not discretionary; and in *State v. Garza,* we stated that Rule 2(b) is to be reserved for cases where suspending a rule will *actually facilitate* processing the case through the appellate court.

---

**3.** On remand, the First Court affirmed the trial court's granting the motions for new trial, citing *Driggers v. State,* 940 S.W.2d 699 (Tex.App.— Texarkana 1996). *State v. Adams,* Nos. 01–92–00194–CR, 01–92–00195–CR, 1998 WL 12695 (Tex.App.—Houston [1st Dist.] Jan. 15, 1998).

■ It has been suggested that abating an appeal and allowing an out-of-time motion for new trial will have the ultimate effect of speeding up the appellate process. *See, e.g., Driggers v. State*, 940 S.W.2d 699, 707 (Tex. App.—Texarkana 1996); *Sanchez v. State*, 885 S.W.2d 444, 446 (Tex.App.—Corpus Christi 1994); *Tuffiash v. State*, 878 S.W.2d 197, 201 (Tex.App.—San Antonio 1994);[4] *Torres v. State*, 804 S.W.2d 918 (2) (Tex. App.—El Paso 1990). Despite this argument's appeal, we are not persuaded that Rule 2(b) is the appropriate vehicle to give it effect. While in a small number of cases the litigation process may ultimately be shortened, we think that the associated delays and restarting of the appellate process upon such speculation makes this an improper use of Rule 2(b). *See Torres v. State*, 804 S.W.2d 918, 920 (Tex.App.—El Paso 1990) ("we are not disposed to encourage a practice of disrupting the orderly and prompt flow of direct appeals by what could well become a routine defense practice of seeking abatement for random trolling of the record for signs of ineffective assistance"). Rule 2(b) is in essence an escape valve to be used by an appellate court when a case becomes unduly stalled or delayed in the appellate process due to procedural rules, and the interests of justice compel speeding up the process; although Rule 2(b) may be used to shorten the time limits when justice so requires, it should not be used as a method to lengthen procedural time limits absent truly extraordinary circumstances, even in an effort to protect the substantive rights of litigants.

Our holding on this issue is strictly limited to the use of Rule 2(b). We should not be understood as restricting a court of appeals' power to abate an appeal and remand a case under authority other than Rule 2(b). When judicial resources can be conserved in the interest of justice, we encourage the courts of appeals to adopt and continue to use methods for resolving issues sooner rather than later,

as long as such methods are legally endorsed. Moreover, a denial of constitutionally guaranteed counsel will be remedied, and the use of Rule 2(b) to effectuate this remedy is not necessary.

■ We now turn to review of the Court of Appeals' holding that the appellant was denied counsel. The State asserts that the record in this case does not support the appellant's claim of denial of counsel, and argues that the appellant's claim of denial of counsel should be heard on an application for a post-conviction writ of habeas corpus rather than on her direct appeal. In *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Cr.App. 1980) we stated:

> Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel. Indeed, in a case such as this, where the alleged derelictions primarily are errors of *omission* de hors the record rather than *commission* revealed in the trial record, collateral attack may be just the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record.

However, a claim on direct appeal of denial of counsel should be entertained and upheld if supported by the record. *See, e.g., Warren v. State*, 744 S.W.2d 614 (Tex.Cr.App.1988).

While we have held that a defendant is entitled to counsel at a *hearing* on a motion for a new trial, *Trevino v. State*, 565 S.W.2d 938, 940 (Tex.Cr.App.1978), this Court has yet to address the issue of whether a defendant is entitled to counsel during the time limit for filing a motion for new trial to assist the defendant in preparing the motion. *See* Wayne R. LaFave & Jerold H. Israel, *Crimi-*

---

4. *Tuffiash v. State*, 878 S.W.2d 197, 201 n. 2 (Tex.App.—San Antonio 1994) makes the following argument:

> If there is merit to appellant's contentions, hearing and granting a motion for new trial at this point is certainly more efficient than requiring this court and the court of criminal appeals to consider an incomplete appeal, then

requiring appellant to seek post-conviction relief (which again taxes the resources of the court of criminal appeals) to obtain a new trial many years from now. If there is no merit to appellant's contentions, it is also most efficient to establish that fact now and allow it to be raised on direct appeal following the denial of the motion for new trial.

*nal Procedure* § 11.2(b) (2nd ed.1992) (defendant's right to counsel at post-trial proceedings before the trial judge that challenge the conviction is not clear). This is the very question we left unanswered in *Connor v. State*, 877 S.W.2d 325, 326–27 (Tex.Cr.App. 1994). Some courts of appeals cases have held that there is such a right. *See, e.g., Boyette v. State*, 908 S.W.2d 56 (Tex.App.—Houston [1st Dist.] 1995); *Oldham v. State*, 889 S.W.2d 461 (Tex.App.—Houston [14th Dist.] 1994); *Cox v. State*, 797 S.W.2d 958 (Tex.App.—Houston [1st Dist.] 1990); *Callis v. State*, 756 S.W.2d 826 (Tex.App.—Houston [1st Dist.] 1988). However, we are not asked today to address this issue and we will not do so, finding that the appellant has failed to show that she was denied counsel during the time limit for filing a motion for new trial.

▪ A defendant has a right to file a motion for a new trial. Tex.R.App.P. 30, 31. This right emanates exclusively from the Rules of Appellate Procedure, and the Rules must be strictly complied with when seeking the remedy. *See Drew v. State*, 743 S.W.2d 207, 223 (Tex.Cr.App.1987) (there is no common law right to move for a new trial in a criminal case; remedy must be pursued in the manner prescribed). The mere filing of a motion for a new trial, whether thereafter pursued or abandoned, has the effect and advantage of extending the appellate time limits in which to give notice of appeal from thirty days to ninety days after sentencing, Tex.R.App.P. 41(b)(1), and it is often used exclusively for this purpose. *See Trevino v. State*, 565 S.W.2d 938, 942 (Tex.Cr.App.1978) (Dally, J., dissenting) (abandoning motion for new trial is legitimate and commonplace practice). Motions for new trial have substantively been used primarily for claims of newly discovered evidence or jury misconduct. *See* George E. Dix & Robert O. Dawson, 43 *Texas Practice* § 41.01 (1995). However, except to adduce facts of a matter not otherwise shown on the record, a motion for new trial is not a requisite to presenting a point of error on appeal. Tex.R.App.P. 30(a).

▪ The appellant in this case did not file a motion for a new trial. She has never indicated any grounds she would have raised in a motion for a new trial. She has never claimed that if she were to file a motion for a new trial that she would be entitled to a new trial, or even a hearing on her motion. The appellant has not claimed that her appeal or other rights were injured in any way due to her failure to file a motion for a new trial, or that she was not able to raise certain grounds because she did not first file a motion for a new trial. She does not claim that her trial counsel was ineffective for failing to file a motion for a new trial. The appellant does not assert that she was not informed by her trial counsel of the opportunity and grounds for filing a motion for a new trial. In fact, she has not even claimed that if given the opportunity to do so, that she would have filed, or would now in fact file, a motion for a new trial. She does claim, instead, simply that she was without counsel during the time limit for filing the motion for a new trial.

In the Court of Appeals, the appellant argued that her trial attorney was released on the day of sentencing, and since appellate counsel was not appointed until sixty-two days later, she was without assistance of counsel during the time period for filing a motion for an new trial, a critical stage of the proceedings at which she is guaranteed Sixth Amendment right to counsel. The State countered that since there was no evidence in the record that her trial attorney was released, the appellant was still represented by counsel. *Oldham v. State*, 889 S.W.2d 461, 462 (Tex.App.—Houston [14th Dist.] 1994).

The Court of Appeals held that "Under the black letter of the law, the state is correct." The court recognized that trial counsel remains the defendant's counsel for all purposes until expressly permitted to withdraw, but when a trial attorney believes that representation has ended, the appellant as a practical matter receives no assistance at all even though there may still be an attorney of record on the case, citing *Ward v. State*, 740 S.W.2d 794, 798–800 (Tex.Cr.App.1987). The Court of Appeals then found that the appellant's trial counsel "seemed to believe his representation of appellant ended after trial," and held that the appellant was likewise, as a practical matter, without representation. *Oldham v. State*, 889 S.W.2d at 462.

The Court of Appeals also relied on three other courts of appeals' opinions in making its determination that the appellant had been denied counsel.

In *Callis v. State*, 756 S.W.2d 826, 827 (Tex.App.—Houston [1st Dist.] 1988), the appellant's appointed trial counsel filed a notice of appeal on the date of sentencing. The docket sheet and notice of assignment contained notations that counsel on appeal was "to be determined," but trial counsel never filed a motion to withdraw. The appellant complained that his appellate counsel was not appointed until after the time limit for filing a motion for new trial had passed. The trial court conducted a hearing and found that the date of appellate counsel's appointment could not be determined. The court held that it would be sheer speculation to conclude that the appellant was represented by counsel at this stage of the proceedings, and that the appellant had successfully met his burden of showing that he was not represented by counsel during a critical stage of the prosecution. *Id.*

In *Cox v. State*, 797 S.W.2d 958 (Tex. App.—Houston [1st Dist.] 1990), the First Court of Appeals again found denial of counsel during the time period for filing a motion for a new trial. The appellant in that case was appointed appellate counsel 33 days after sentencing. The court did not elaborate further on the details of the case, other than to cite *Callis* and find a denial of counsel.

The San Antonio Court in *Ortega v. State*, 837 S.W.2d 831 (Tex.App.—San Antonio 1992), considered the issue, but distinguished *Callis*. The court held, based on *Ward v. State*, 740 S.W.2d 794 (Tex.Cr.App.1987), appointed counsel remains as the defendant's counsel for all purposes until expressly permitted to withdraw, even if the appointment is for trial only. The court found nothing in the record to support a conclusion that trial counsel was permitted to withdraw or otherwise replaced by counsel until the appellate counsel was appointed, twenty days after the time limit for filing a motion for new trial had expired. The mere fact that no motion for a new trial was filed, the court reasoned, did not mean that the appellant was denied

counsel during that time. *Ortega v. State*, 837 S.W.2d at 832.

In this case, the Court of Appeals followed *Callis* and *Cox*, and criticized *Ortega* on the ground that the San Antonio Court had not correctly applied the rule set forth in *Ward*, namely that although there was an attorney of record, the appellant nonetheless essentially received no assistance at all because trial counsel mistakenly believed that his representation had ended.

In *Steel v. State*, 453 S.W.2d 486, 487 (Tex. Cr.App.1970), we recognized that "retained counsel, even one who has not been fully compensated for past services or compensated for further service, cannot wait until a critical stage of the proceedings is reached and bow out without notice to the court and the accused and 'frustrate forever accused's right to protect his vital interests.'" In *Ward v. State*, 740 S.W.2d 794, 796–97 (Tex. Cr.App.1987), we stated that "it is abundantly clear that an appointed attorney's legal responsibilities do not magically and automatically terminate at the conclusion of the trial. . . . The continuity of representation from trial to appeal is necessary to correct the ambiguity of representation which all too often follows a conviction." In *Ex parte Axel*, 757 S.W.2d 369, 374 (Tex.Cr.App.1988), we held that "trial counsel, retained or appointed, had the duty, obligation and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, and the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal. The decision to appeal belongs to the client."

We have scoured the record in search of the evidence showing that trial counsel thought his duties were completed with the end of the trial, and had thereafter abandoned the appellant. The appellant points us to none, the Court of Appeals points us to none, and we can find none ourselves. The only relevant facts the record shows are that the appellant filed a *pro se* notice of appeal

and indigency on the twenty-eighth day after sentencing, there is a notation in the letter of assignment that attorney of record on appeal is to be determined, and appellate counsel was appointed sixty-two days after sentencing.

■ We hold that such facts do not rebut the presumption that the appellant was represented by counsel and that counsel acted effectively. *Cf. Dyches v. State*, 382 S.W.2d 928, 930 (Tex.Cr.App.1964) ("there is nothing in the record to show or indicate that the appellant was harmed by the failure of his counsel to file motion for new trial"). There is nothing in the record to suggest that the attorney did not discuss the merits of a motion for a new trial with the appellant, which the appellant rejected. When a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected. Additionally in this case, the fact that the appellant filed a *pro se* notice of appeal is evidence that she must have been informed of at least some of her appellate rights, and we presume she was adequately counseled unless the record affirmatively displays otherwise.

We hold that the record shows that the appellant was officially represented by counsel at all times in the litigation, and the appellant has failed to overcome the presumption that counsel was acting effectively at all times.

> Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel. Indeed, in a case such as this, where the alleged derelictions primarily are errors of *omission* de hors the record rather than *commission* revealed in the trial record, collateral attack may be ... the vehicle by which a thorough and detailed examination

of alleged ineffectiveness may be developed and spread upon a record.

*Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Cr. App.1980). "For this reason we have held that, when direct appeal has not provided an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a habeas corpus proceeding, we will not apply the general doctrine that forbids raising a claim on habeas corpus after it was rejected on appeal. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Cr. App.1997)." *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Cr.App., 1998).

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for consideration of the appellant's remaining points of error.

MEYERS, J., dissents.

OVERSTREET, J., files a dissenting opinion.

PRICE, J., files a dissenting opinion.

BAIRD, Judge, dissenting on state's motion for rehearing.

Appellant was convicted of forgery and the trial judge assessed punishment at three years confinement. Tex. Penal Code § 32.21. The Court of Appeals remanded appellant's case for a hearing on appellant's untimely motion for new trial. *Oldham v. State*, 889 S.W.2d 461 (Tex.App.—Houston [14th Dist.] 1994). After due consideration, we dismissed the State's petition for discretionary review.[1] *Oldham v. State*, 977 S.W.2d 569 (Tex.Cr.App.1996). Because a majority of the Court sustains the State's motion for rehearing, I respectfully dissent.

### I.

Appellant was represented by retained counsel at trial. On the twenty-eighth day

---

1. We originally granted the State's petition for discretionary review to determine:
   1. Whose burden is it to show that an appellant was or was not abandoned by trial counsel during a critical stage of the prosecution?

2. May an appellate court suspend application of the rules of appellate procedure without any firm basis in the record for finding good cause?

after sentencing, appellant filed a pro se notice of appeal and requested the appointment of counsel for her appeal. The trial judge complied, and sixty-two days after sentence was imposed and thirty-three days after the deadline for filing a motion for new trial, an attorney was appointed to represent appellant. In points of error twelve through fifteen, appellant contended she was denied her constitutional right to counsel during a critical stage of the judicial proceedings. *Id.,* 889 S.W.2d at 462. The Court of Appeals agreed.

To reach its holding, the Court of Appeals first concluded appellant was denied the right to counsel. *Id.,* at 462 (citing *Ward v. State,* 740 S.W.2d 794, 798 (Tex.Cr.App. 1987)). The Court then, relying upon *Trevino v. State,* 565 S.W.2d 938 (Tex.Cr.App. 1978); *Cox v. State,* 797 S.W.2d 958 (Tex. App.—Houston [1st Dist.] 1990); and, *Callis v. State,* 756 S.W.2d 826 (Tex.App.—Houston [1st Dist.] 1988); held that appointment of an attorney after the time period for filing a motion for new trial expires was a denial of counsel at a critical stage of the proceedings. *Oldham,* 889 S.W.2d at 463. *See, Cox,* 797 S.W.2d at 959, *and, Callis,* 756 S.W.2d at 827. The Court concluded that "good cause" was shown under Tex.R.App. P. 2(a) to suspend the time constraints for filing a motion for new trial under Tex.R.App. P. 31(a). *Oldham,* 889 S.W.2d at 463. The Court held:

> The type of order required by *Trevino* reinstates jurisdiction in the trial court and returns appellant to the point after judgment and assessment of sentence, but before imposition of sentence and filing of notice of appeal. Therefore, since the appeal must be set aside to allow appellant to file her motion for new trial, this case cannot remain in this Court. For this reason, we must issue a mandate disposing of this appeal.
>
> If appellant's motion for new trial is granted, then her case will be retried. If the motion is denied, the trial court should pronounce sentence and appellant may give notice of appeal within ninety days after sentencing. After appellant files her

timely notice of appeal, the case will be refiled in the appellate court.

> Accordingly, the sentence and notice of appeal are set aside and the cause is remanded to the trial court for a hearing on the motion for new trial and for the orderly conduct of subsequent post-trial proceedings, in accordance with this opinion.

*Ibid.* (citations omitted).

## II.

In *Trevino,* 565 S.W.2d at 938, the defendant was denied the right to counsel at the hearing on his motion for new trial. We held the proper remedy was to return the case to that point where the defendant was denied counsel:

> ... Because in the instant case appellant was denied counsel at a stage of the review process prior to sentence and notice of appeal, we set aside the sentence and notice of appeal and return the cause for a hearing on the motion for new trial and an orderly course of subsequent events. In the event appellant's motion for new trial is denied, sentence should then be pronounced and notice of appeal may be given....
>
> The sentence and notice of appeal are set aside and the cause is remanded to the trial court for a hearing on the motion for new trial and for the orderly conduct of subsequent post-trial proceedings.

*Id.,* 565 S.W.2d at 941.

In *Connor v. State,* 877 S.W.2d 325 (Tex. Cr.App.1994), the defendant was represented by retained counsel and pled guilty. After sentence was imposed, the trial judge received two letters from the defendant alleging his plea was involuntary. The trial judge treated the letters as a motion for new trial and held a hearing. The defendant was not represented by an attorney at this hearing because he "had not had time to hire an attorney." *Id.,* 877 S.W.2d at 326. We held that a motion for new trial is a critical stage of the proceedings and that appellant was entitled to be represented by an attorney. *Ibid.*[2] After we vacated and remanded the

---

**2.** The majority correctly states "this Court has yet to address the issue of whether a defendant is entitled to counsel during the time limit for filing a motion for new trial in preparing the motion,"

case to the Court of Appeals to reconsider the defendant's right to an attorney, *id.,* 877 S.W.2d at 327, that Court, in an unpublished opinion, remanded the case to the trial court and returned the defendant to the point in which he was denied counsel. *Connor v. State,* (Tex.App.—Austin, Nos. 3–89–229–CR, 3–89–230–CR, 3–89–231–CR, delivered December 7, 1994)(unpublished).[3]

In *Ex parte Axel,* 757 S.W.2d 369 (Tex.Cr. App.1988), the defendant was represented by a retained counsel at trial. Following his conviction, the defendant informed his attorney that he wished to appeal, but was indigent. The attorney did not agree to represent the defendant and took no action to preserve the defendant's right to appeal. *Id.,* 757 S.W.2d at 371. Because the defendant was denied his right of appeal, we vacated the judgment and remanded the case to the trial court with instructions to assure the defendant was represented by counsel and permitted to file a notice of appeal. *Id.,* 757 S.W.2d at 374–375.

The instant case is controlled by *Trevino, Connor* and *Axel* because appellant was denied the assistance of an attorney at a critical stage of the proceedings.[4] Thus, like the defendant in *Axel,* "this presumptively indigent [defendant] did not receive any practical assistance of counsel in protecting and preserving [her] appellate rights." *Axel,* 757 S.W.2d at 374. And, as in *Trevino* and *Axel,* when the Court of Appeals determined appellant was denied the effective assistance of counsel, the Sixth Amendment required that appellant be returned to that point in the proceedings where the denial occurred. In its attempt to return appellant to that point in the proceedings where she was denied counsel, the Court of Appeals imprecise language purported to "suspend" the rules, "abate" and "remand" the case. *Oldham,* 889 S.W.2d at 463. However, this action was unnecessary when the Court determined appellant's Sixth Amendment right to counsel was violated. Our holdings in *Trevino* and *Axel* rely upon constitutional principles, *not* the Texas Rules of Appellate Procedure.

The United States Constitution provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI. cl. 2. Therefore, whether the Court of Appeals could, under Rule 2, suspend the time limitations and allow appellant to file a motion for new trial, is immaterial. Appellant's rights under the Sixth Amendment were violated and Rule 2 may not operate to deny or prevent the remedy to a constitutional violation. *See, State v. McPherson,* 851 S.W.2d 846, 850 (Tex.Cr. App.1992)(The Eighth Amendment takes precedence over Tex.Code Crim. Proc. art. 37.07 § 1(a).); *and, Whitmore v. State,* 570 S.W.2d 889 (Tex.Cr.App.1976) ("[I]n some cases where an accused's constitutional rights are in conflict with a valid procedural rule of law the procedural rule must yield to the superior constitutional right."). In other words, representation by counsel at this critical stage of the trial is a fundamental right in our system of justice that takes precedence over procedural rules. Simply stated, this is *not* a Rule 2 case.

*Ante* at 361. However, in reliance upon *Trevino,* this Court flatly held, without limitation, that: "The Court of Appeals correctly recognized that a motion for new trial is a 'critical stage' at which a defendant is entitled to representation by counsel." *Connor v. State,* 877 S.W.2d 325, 326 (Tex.Cr.App.1994)(citing *Trevino v. State,* 565 S.W.2d 938, 940 (Tex.Cr.App.1978))("Without a doubt the hearing on a motion for new trial is a critical stage of the proceedings. It is the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review.")

3. I recognize that Tex. Rule of App. Proc. 47.7 forbids the citation of an unpublished opinion as authority. However, this citation is solely to inform the reader of the action taken by the Court of Appeals in order to complete the history of the case after our *published* opinion.

4. The majority's reliance upon *State v. Garza,* 931 S.W.2d 560 (Tex.Cr.App.1996) is misplaced. A constitutional deprivation takes precedence over any procedural rule. See Sixth Amendment discussion *infra.*

## III.

Our judicial power does not include the power to issue advisory opinions. *Ex parte Ruiz,* 750 S.W.2d 217, 218 (Tex.Cr.App.1988) ("It is well-established that this Court is without constitutional or statutory authority to ... render advisory opinions...."); *Armstrong v. State,* 805 S.W.2d 791, 794 (Tex.Cr. App.1991); *and,* Tex. Const. art. V, §§ 1 and 5. In *Garrett v. State,* 749 S.W.2d 784, 803 (Tex.Cr.App.1986) (opinion on rehearing), we held that "[a]n advisory opinion results when a court attempts to decide an issue that does not arise from an actual controversy capable of final adjudication...." *Ibid. See, Gonzales v. State,* 864 S.W.2d 522 (Tex.Cr.App. 1993) (Baird, J., concurring) (citing *Douglas Oil Co. v. State,* 81 S.W.2d 1064, 1077 (Tex. Civ.App.—Austin 1935)) ("An advisory opinion is one which 'adjudicates nothing and is binding on no one.'"). Stated differently, an opinion which does not "finally adjudicate" the matters before the Court is advisory. While the majority's gratuitous discussion of Rule 2 purports to resolve an issue in this case, it is not an issue capable of final adjudication because, under the Supremacy Clause of the United States Constitution, the Sixth Amendment violation must take precedence. Therefore, the majority's discussion of Rule 2 is nothing more than *obiter dictum* and its entire opinion is only advisory.[5]

With these comments, I respectfully dissent.

OVERSTREET, Judge, dissenting on state's motion for rehearing.

Today this Court decides that our decision to dismiss the State's petition for discretionary review as improvidently granted was erroneous, and instead grants the State's motion for rehearing and grants relief. To that action I respectfully dissent.

I reiterate what I stated in my concurring opinion on original submission. I fully agree that appellant in this case is entitled to the

relief of being represented by counsel during the time period wherein she has the opportunity to file a motion for new trial pursuant to Tex.R.App.Pro. 31(a)(1). I am satisfied that the court of appeals' opinion effectively accomplishes this end and believe the court of appeals decision should be sustained.

Appellant was charged by indictment with the offense of forgery, Tex. Penal Code Section 32.21 (Vernon 1989), alleged to have been committed on or about January 9, 1989, in Harris County. On January 13, 1992, a jury found Appellant guilty of forgery; the trial court assessed punishment at three years confinement in the Texas Department of Criminal Justice—Institutional Division (TDCJ–ID). The Fourteenth Court of Appeals held that appellant had been denied her right to counsel at a critical stage of the judicial proceedings and ultimately remanded the cause to the trial court for a hearing on the motion for new trial and the orderly conduct of subsequent post-trial proceedings in accordance with its opinion. *Oldham v. State,* 889 S.W.2d 461 (Tex.App.—Houston [14th Dist.] 1994). We granted the State's petition for discretionary review on two questions/grounds:

1. Whose burden is it to show that an appellant was or was not abandoned by trial counsel during a critical stage of the prosecution?

2. May an appellate court suspend application of the rules of appellate procedure without any firm basis in the record for finding good cause?

## I. SUMMARY OF PERTINENT FACTS

On January 13, 1992, a jury found Appellant guilty of forgery; she was sentenced the same day. It is undisputed that appellant had retained counsel during the trial and sentencing. On February 10, 1992, appellant filed pro se notices of indigency and of appeal. On March 16, 1992, the trial court

---

5. In *State v. Adams,* 930 S.W.2d 88 (Tex.Cr.App. 1996), we asked the First Court of Appeals to consider whether a court of appeals may, under Rule 2, suspend the time limits of Rule 31 and allow a defendant to file an "out-of-time" motion for new trial. *Id.,* 930 S.W.2d at 92. Relying upon *Driggers v. State,* 940 S.W.2d 699, 706–08

(Tex.App.—Texarkana 1996, pet ref'd), the First Court of Appeals held the trial court did have jurisdiction to conduct a hearing on the defendants' motions for new trial. *State v. Adams,* Nos. 01–92–00194–CR, 01–92–00195–CR, 1998 WL 12695 (Tex.App.—Houston [1st Dist.] Jan. 15, 1998)(not designated for publication).

appointed appellate counsel. The appointment of counsel occurred sixty-three days after sentence was imposed and thirty-three days after the deadline for filing a motion for new trial had expired.

On March 16, 1992, appellant's appointed counsel filed a motion to abate the appeal on the grounds that she had been denied counsel during the thirty-day period for filing a motion for a new trial. On April 9, 1992, appellant's appointed counsel filed an amended motion for abatement of appeal. On April 16, 1992, the Fourteenth Court of Appeals overruled appellant's motion for abatement of appeal.

On appeal, appellant raised fifteen points of error. The court of appeals held that points of error twelve through fifteen were dispositive of the case and declined to discuss points of error one through eleven. *Oldham v. State,* 889 S.W.2d 461, 462 (Tex.App.—Houston [14th Dist.] 1994). In points of error twelve through fifteen, appellant contended that she was denied her constitutional right to counsel during a critical phase of the judicial proceedings. The Fourteenth Court of Appeals agreed and remanded the case to the trial court for a hearing on the motion for a new trial. In accordance with Texas Rule of Appellate Procedure 2(b), the court of appeals held that appellant had demonstrated "good cause" for extending the deadline for filing a motion for new trial. *Id.* at 463.

## II. ANALYSIS OF STATE'S CLAIMS

The State contends that there is no evidence on the docket sheet that appellant's trial attorney was released, and that therefore she was still technically represented by counsel. The court of appeals held that it was clear that appellant was denied her right to counsel at a critical stage of the judicial proceedings.

In addition, the State urges us to mandate that "good cause" be evinced by a foundation upon the record before the Rules of Appellate Procedure can be suspended by a court of appeals or even by this Court. The court of appeals held that good cause was shown to suspend the Rules of Appellate Procedure.

In *Arcila v. State,* 834 S.W.2d 357 (Tex.Cr.App.1992), this Court decided that it would decline to substitute its own judgment for that of the court of appeals, even if this Court's decision might be different on a question presented. "So long as it appears that [the court of appeals] ha[s] discharged [its] duty conscientiously by impartial application of pertinent legal doctrine and fair consideration of the evidence, it is our duty in turn to respect [its] judgments." *Id.* at 360. While *Arcila* involved a defendant's petition for discretionary review and the instant cause is the result of the State's petition for discretionary review, such is not a reason for disparate treatment.

## III. CONCLUSION

In answer to the State's question/ground for review number one, the burden of proof to show abandonment of counsel is upon the appellant. In the instant case, the court of appeals found that appellant met that burden. In answer to the State's question/ground for review number two, an appellate court for good causes shown may suspend requirements and provisions of any of the Rules of Appellate Procedure in a particular case. In the instant case, the court of appeals found good cause to suspend the rules.

Based on *Arcila, supra,* we should decline to substitute our judgment in the instant cause for that of the court of appeals. Therefore the judgment of the court of appeals should be sustained by this Court and our improvident grant dismissal on original submission appropriately did so. I also note that a pro se defendant, unschooled in the finer points of legal advocacy, who is without legal counsel would be very hard pressed to know the proper procedure to create and present a record to show that he is without legal counsel.

Because a majority of this Court now, on rehearing over two years after our opinion on original submission, chooses to substitute its judgment for that of the court of appeals, I respectfully dissent.

PRICE, Judge, dissenting on state's motion for rehearing.

## I. Procedural background of the case.

The Court of Appeals held that Appellant was denied her right to counsel during the time in which to file a motion for new trial. *Oldham v. State*, 889 S.W.2d 461, 462–63 (Tex.App.—Houston [14th Dist.] 1994). The Court of Appeals used Rule 2(b) to suspend that time period, and the court remanded the case to the trial court so Appellant could file a motion for new trial. *Id.* at 463.

The State's petition for discretionary review raised two grounds for review:

1. Whose burden is it to show that an appellant was or was not abandoned by counsel during a critical stage of the prosecution?

2. May an appellate court suspend application of the rules of appellate procedure without any firm basis in the record for finding good cause?

We granted review of both grounds, but we later dismissed the petition as having been improvidently granted. *Oldham v. State*, No. 1350–94, 977 S.W.2d 569 (Tex.Crim.App. 1996). The State filed a motion for rehearing urging a jurisdictional complaint for the first time in the following ground for rehearing, which we granted:

This Court erred in allowing to stand the decision of the court of appeals, in which the court of appeals gave jurisdiction to the trial court to hold a hearing on a motion for new trial when the trial court had already lost jurisdiction over the case.

## II. Introduction.

Because neither the State's motion for rehearing nor the State's petition for discretionary review asserts that Rule 2(b) of the Texas Rule of Appellate Procedure does not authorize courts of appeals to allow out-of-time motions for new trial, because I believe this is not the type of case in which to resolve the Rule 2(b) out-of-time motion for new trial issue even if it were raised, because I do not agree with the majority's holding on that issue, and because I believe that the majority twice exceeds the scope of the State's motion for rehearing, I respectfully dissent.

## III. The issue presented.

The majority addresses whether Rule 2(b) authorized the court's action. The State never has complained that it does not. The State's petition for discretionary review questioned whether the appellate record supported the Court of Appeals' conclusion that Appellant was denied his right to counsel during the time in which to file a motion for new trial. The State's petition did not contest the scope of Rule 2(b). The State's motion for rehearing complains that the Court of Appeals lacked authority to restore jurisdiction to the trial court for a motion for new trial. In support of its ground for rehearing, the State relies on this Court's opinion in *Olivo v. State*, 918 S.W.2d 519 (Tex. Crim.App.1996), as the intervening circumstance. The State pointed out that the trial court lost jurisdiction to hear any motion for new trial under former Rule 31(a)(1). The State contends that a court of appeals may not utilize the Texas Rules of Appellate Procedure to create jurisdiction where none exists, citing *Olivo*, 918 S.W.2d at 523. The State argues that because the trial court had already lost jurisdiction to hear a motion for new trial, the Court of Appeals did not have authority to give that jurisdiction to the trial court. The State's motion for rehearing does not even mention Rule 2(b), much less argue how that rule operates. The State's position is simply that once a trial court loses jurisdiction, a court of appeals may not give the trial court jurisdiction to entertain a motion for new trial.[1]

---

1. Ironically, in this case sparked by a complaint concerning the right to counsel, there has been no brief filed on Appellant's behalf in this Court. Appellant's brief was due on April 3, 1995. Although on June 19, 1996, we dismissed the State's petition as having been improvidently granted, we granted the State's motion for rehearing on October 16, 1996. This Court's poli-

cy of granting a State's petition for discretionary review and deciding the case without inquiry into the lack of an appellant's brief is disturbing. Courts of appeals may not decide an appeal of a criminal case without such an inquiry. Tex. R.App.P. 38.8(b). This Court may not do so in a direct appeal of a case in which the death penalty has been assessed. Tex.R.App.P. 71.3 (briefs

The majority never answers the question presented by the State's motion for rehearing, although the majority alludes to the answer when stating:

> Our holding on this issue is strictly limited to the use of Rule 2(b). We should not be understood as restricting a court of appeals' power to abate an appeal and remand a case under authority other than Rule 2(b)....[A] denial of constitutionally guaranteed counsel will be remedied, and the use of Rule 2(b) to effectuate this remedy is not necessary.

*Oldham v. State*, 977 S.W.2d at 360 (Tex. Crim.App.1998). Instead, the majority addresses an issue not raised by the petition for discretionary review or the motion for rehearing—the scope of Rule 2(b). Had we granted the State's petition for discretionary review on our own motion under former Rule 201, or had we granted rehearing on our own motion, assuming we have the authority,[2] we could have framed whatever issue presented by the case that we wanted to address. We did not do that, so we are limited to addressing the issue presented by the State's motion for rehearing. Unfortunately, that is the very issue that the majority expressly notes it is not addressing.

Courts of appeals have no need to resort to Rule 2(b) in this type of situation. In cases in which a defendant is improperly denied counsel at a hearing on a motion for new trial, appellate courts remand the case for a proper hearing on the motion for new trial. *Trevino v. State*, 565 S.W.2d 938 (Tex.Crim. App.1978). Of course, by then, the time has long passed for a trial court to act on a motion for new trial. See former Tex. R.App.P. 31(e). Nevertheless, there is no suspension of the rules under Rule 2(b) in that situation; it is just a matter of the proper appellate remedy, which involves restoring limited jurisdiction in the lower court. See also *Green v. State*, 906 S.W.2d 937 (Tex.Crim.App.1995) (trial court's findings entered under Art. 38.22, § 6, V.A.C.C.P., but after trial court lost jurisdiction, were void, so capital murder appeal abated and case remanded to revive trial court's authority to enter findings); *Trevino v. State*, 841 S.W.2d 385 (Tex.Crim.App.1992) (trial court erred in denying appellant a *Batson* hearing, so capital murder appeal abated and case remanded to trial court for a *Batson* hearing); *Spence v. State*, 758 S.W.2d 597 (Tex. Crim.App.1988) (trial court erred in precluding appellant from making offer of proof at hearing on pretrial motion to dismiss indictment, so capital murder appeal abated and case remanded to trial court for hearing at which appellant could perfect record). Similarly, when a petition for discretionary review is filed, the court of appeals loses authority to act on the case once fifteen days have passed under former Rule 101 or thirty days have passed under new Rule 50. *Garza v. State*, 896 S.W.2d 192 (Tex.Crim.App. 1995). However, this Court can remand a

---

in a direct appeal should be prepared and filed in accordance with Rule 38). The petitioning party must file a brief after discretionary review is granted. *Hunter v. State*, 954 S.W.2d 767 (Tex. Crim.App.1995) (order on appellant's motion to dismiss). In *Hunter* we construed former Rule 203(a), which provided that the petitioning party shall file a brief. The same rationale holds for current Rule 70.2, which provides that the opposing party must file a brief within thirty days after the petitioner's brief is filed. Moreover, Appellants are entitled to be represented by counsel when this Court grants a petition for discretionary review, and indigent appellants are entitled to appointed counsel after discretionary review is granted. *Peterson v. Jones*, 894 S.W.2d 370 (Tex.Crim.App.1995). It makes no sense to require a brief be filed on an appellant's behalf after a State's petition is granted, to require the appointment of counsel for indigent appellants when a petition is granted, to require an inquiry into the lack of an appellant's brief in courts of appeals and in death penalty appeals, but then to fail to make such an inquiry ourselves in a discretionary review setting.

2. See *Mosley v. State*, —— S.W.2d ——, 1998 WL 349513 (Tex.Crim.App. No. 72,281, delivered July 1, 1998) (rehearing granted on Court's own motion); and *Ex parte Patterson*, 969 S.W.2d 16 (Tex.Crim.App., delivered 1998) (rehearing granted on Court's own motion); but see *Oldham*, 977 S.W.2d at 358 (discussing our use of Rule 2(b) in *Rose v. State*, 752 S.W.2d 529 (Tex. Crim.App.1987), to rehear a case on our own motion); and *Oldham*, 977 S.W.2d at 361 (Rule 2(b) is to be used when a case becomes unduly stalled or delayed in the appellate process due to procedural rules, and the interests of justice compel speeding up the process). Granting rehearing on our own motion does not speed up the appellate process.

case to the court of appeals for further consideration or for further action if that is the appropriate remedy. See, e.g., *Woods v. State,* 956 S.W.2d 33 (Tex.Crim.App.1997). We have never invoked Rule 2(b) to do so; it is simply within this Court's authority to fashion the proper remedy and, if necessary, to restore jurisdiction in a lower court.

In a case such as this, if an appellate court were to conclude that an appellant was abandoned by counsel during the time in which to file a motion for new trial, the proper appellate remedy would be to return the appellant to the point at which a motion for new trial can be filed. Cf. *Connor v. State,* 877 S.W.2d 325 (Tex.Crim.App.1994) (motion for new trial is a critical stage at which a defendant is entitled to representation by counsel; case remanded to court of appeals to determine if appellant was entitled to counsel to assist in preparing and filing motion for new trial). Again, courts of appeals have authority to restore jurisdiction in the lower court if that is the appropriate remedy. No suspension of the appellate rules would be required. The majority seems to recognize this in passing. *Oldham v. State,* 977 S.W.2d 360 (Tex.Crim. App.1998).

Consequently, in answer to the issue posed by the State in its motion for rehearing, the Court of Appeals had authority to restore jurisdiction in the trial court as a remedy for what it concluded to be the deprivation of Appellant's right to counsel during a critical stage, without resorting to Rule 2(b). Because the intervening circumstance relied on by the State in its motion for rehearing does not pertain to the propriety of the Court of Appeals' holding that Appellant was denied his right to counsel, and because the ground for rehearing does not re-raise that matter, this Court should just address the issue that was presented and hold that appellate courts have authority to restore jurisdiction to trial court's in order to effectuate an appellate remedy. Alternatively, since this is hardly a novel revelation of law, the Court could dismiss the motion for rehearing as having been improvidently granted.

### IV. The Rule 2(b) issue.

The majority, however, addresses the Rule 2(b) issue. The majority holds that using Rule 2(b) to suspend or enlarge appellate time limits oversteps the contemplated uses of Rule 2(b), except in truly extraordinary circumstances. *Oldham,* 977 S.W.2d at 359, 360. I disagree with this Court's holding on the merits.

### A. *State ex. rel Cobb v. Godfrey* and certainty in the finality of a judgment.

The majority relies on *State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47 (Tex.Crim.App.1987), for the proposition that "Rule 31 serves the vital function of promoting certainty regarding the finality of a judgment." *Oldham,* 977 S.W.2d at 359. In that case the State sought a writ of mandamus requiring the trial judge to dismiss an untimely order granting a motion for new trial. In response, the trial judge asked this Court to suspend the rules and permit the granting of the motion for new trial after it had been overruled by operation of law. We declined to do so As the majority points out, we discussed the function of Rule 31(e) as "promoting certainty regarding the finality of a judgment, *in a case in which a motion for new trial has been filed." Id.* at 49 (emphasis added). We observed that the trial court lost jurisdiction to rule on the motion for new trial when it was overruled by operation of law. *Id.* We did not hold that Rule 2(b) could not be used to suspend Rule 31. Instead, we held, "Respondent has failed to show good cause why this Court should suspend this rule, other than to remedy his own tardiness. For these reasons, we decline to suspend the rules pursuant to Rule 2(b), supra, as suggested by respondent." *Id.* We simply declined to exercise our discretion to utilize Rule 2(b) because we were not persuaded that there was good cause to do so. Our discussion about the certainty regarding the finality of a judgment after a motion for new trial has been filed must be read in the context of the situation presented in that case.

After a motion for new trial is filed, it is deemed denied, or overruled by operation of law, if the trial court does not act on the motion within seventy-five days. Tex.

R.App.P. 21.8(c); former Rule 31(e). If that time period passes without action by a trial judge, and the judge can grant the motion sometime after the seventy-five day period, then there are serious problems with and legitimate concerns about the finality of a judgment in cases in which a motion for new trial was deemed denied or overruled by operation of law. Therefore, taking into account the concerns with the finality of a judgment in such a situation, we declined to invoke Rule 2(b) because good cause was not shown. However, when a case is on appeal, there is no doubt that the judgment is not final. Those same problems with finality of a judgment do not arise when a court of appeals uses Rule 2(b) to allow for an out-of-time motion for new trial.

Additionally, contrary to the majority's holding regarding the contemplated uses of Rule 2(b), I read this Court's opinion in *State ex rel. Cobb v. Godfrey* as do Professors Dix and Dawson: "The Court of Criminal Appeals has assumed it has the power to suspend the thirty day requirement of Rule 31(c) but found the case before it did not call for the exercise of that power." G. Dix & R. Dawson, *Criminal Practice and Procedure* § 43.349 n. 1 (Texas Practice 1995) (citing *State ex rel. Cobb v. Godfrey*, 739 S.W.2d at 49).

### B. *Tallant v. State* and disregarding rules.

The majority also relies on our decision in *Tallant v. State*, 742 S.W.2d 292 (Tex.Crim. App.1987), for the proposition that "the Rules may not be disregarded." *Oldham*, 977 S.W.2d at 359. In *Tallant*, the Court of Appeals held that evidence was inadmissible because it was seized pursuant to an invalid search warrant. In its petition for discretionary review, the State argued for the first time that the error was not preserved. This Court observed that our review is limited to

those issues decided by courts of appeals, included in petitions for review, and granted as grounds for review. *Tallant*, 742 S.W.2d at 294. We stated:

> There was and is a provision for suspending rules of appellate procedure. See former rule 4 and Tex.R.App.Pro. Rule 2(b). There is none for ignoring, disregarding or violating them on the part of any party or appellate court, especially this one. Transgressions of rules of appellate procedure which this Court has insisted be followed cannot be summarily dismissed. *Id.*

The rule at issue in *Tallant* went to the very heart of this Court's discretionary review power, which is that we may review *decisions* of courts of appeals. Tex. Const. Art. V, § 5; Art. 44.45(a), (b), V.A.C.C.P.; Tex.R.App.P. 67.1, 68.1. *Davis v. State*, 870 S.W.2d 43, 47 (Tex.Crim.App.1994) (this Court cannot review issues which have not first been properly presented to and ruled on by the court of appeals); *Montalbo v. State*, 885 S.W.2d 160, 161 n. 1 (Tex.Crim.App.1994) (this Court is without authority to address a legal issue not addressed by the court of appeals); *Owens v. State*, 827 S.W.2d 911, 917–18 n. 7 (Tex.Crim.App.1992) (the discretionary review system under the Texas Constitution dictates that the function of this Court in noncapital cases is to pass only on legal questions that have been resolved by the courts of appeals); *Lee v. State*, 791 S.W.2d 141, 142 (Tex.Crim.App.1990) (under Tex. Const. Art. V, § 5, Art. 44.45, and former Rule 200(a), this Court reviews decisions of courts of appeals, so case remanded for court of appeals to address the merits of an issue in the first instance). Of course we could not use Rule 2(b) in *Tallant* to exceed our constitutionally granted authority. In that context, we could not suspend, ignore, disregard, or violate a rule that restates our constitutional limitations.[3] As for our discussion in *Tallant* that indicates that rules gen-

---

3. In conjunction with *Tallant*, the majority cites Ex parte Herrera, 860 S.W.2d 106 (Tex.Crim. App.1993), observing that we refused to use Rule 2(b) to allow an out-of-time motion for new trial based on newly discovered evidence. *Oldham*, 977 S.W.2d at 358. In *Herrera* the applicant filed a request for leave to file an original application for writ of habeas corpus and a request to

suspend Rule 31. Again, we did not hold in *Herrera* that Rule 2(b) could not be used to suspend the time limit for filing a motion for new trial under Rule 31. We simply stated that "applicant's request for this Court to suspend the Rules of Appellate Procedure under Tex.R.App. Pro., Rule 2(b) is denied...." *Herrera*, 860 S.W.2d at 106.

erally may be suspended, but they may not be ignored, disregarded, or violated, that makes no sense.

When a rule is suspended, technically that rule is not ignored, disregard, or violated. It is suspended pursuant to Rule 2(b). To the extent that we meant in *Tallant* that the practical effect of suspending a rule is that the rule is ignored, disregarded, or violated, then that will be true in every instance in which a rule is suspended. Under that rationale, Rule 2(b) would be meaningless.

For the foregoing reasons, I do not believe that *Tallant* requires the majority's holding regarding Rule 2(b).

### C. *Garza v. State* and *Olivo v. State*.

Next, the majority cites *Garza v. State*, 896 S.W.2d 192 (Tex.Crim.App.1995), for the proposition that "the time limits in the Rules are not discretionary." *Oldham*, 977 S.W.2d at 359. In *Garza v. State*, the question presented was whether the Court of Appeals could issue an opinion pursuant to Rule 101 after the time in which to do so expired. The appellant argued that Rule 2(b) permitted the Court of Appeals to suspend the time limits of Rule 101. As the majority states, we rejected that contention. However, we did so as follows: "... Rule 2(a) specifically states that the Rules 'shall not be construed as to *extend* or limit the jurisdiction of the courts of appeal ....'" (emphasis added). Further, the Court of Appeals did not purport to invoke the provisions of Rule 2(b) rendering this portion of appellant's argument inapplicable." *Garza v. State*, 896 S.W.2d at 194. We also stated, "The time limits set forth in the Rules of Appellate Procedure are not discretionary. The courts of appeals have no authority to suspend the operation of a rule of appellate procedure in order to create jurisdiction in the court of appeals where no jurisdiction exists. See *Jones v. State*, 796 S.W.2d 183 (Tex.Cr.App. 1990)." *Garza v. State*, 896 S.W.2d at 194. This Court opined, "If appellate courts were able to suspend the timetables, to which they are held to comply, there would be nothing this Court could do to promote the timeliness of the appellate process and the every purpose of the Rules would be undermined."

*Id.* We concluded the timely filing of a petition for discretionary review vests this Court with jurisdiction, and after the time in which a court of appeals may act under Rule 101 expires, this Court has exclusive jurisdiction. *Id.* at 195.

We discussed *Garza v. State* in *Olivo*, 918 S.W.2d 519. In *Olivo* this Court stated that our discussion of Rule 2(a) in *Garza v. State* was dicta, because in *Garza v. State* we had concluded that the appellant's argument concerning Rule 2(b) was inapplicable since the Court of Appeals did not purport to invoke that rule. *Olivo*, 918 S.W.2d at 523 n. 7. We also pointed out that in *Garza v. State* we did not explain how Rule 2(a) affected the appellant's Rule 2(b) argument. *Id.* Finally, as the majority notes, we recognized in *Olivo* that Rule 2(a) does not operate as a limitation on the suspension of time limits under Rule 2(b), contrary to this Court's suggestion in *Garza v. State*. *Id.* at 522–23. As we explained in *Olivo*, neither Rule 2(b) nor Rule 2(a) prohibits an appellate court from suspending appellate procedural time limits. *Olivo*, 918 S.W.2d at 522–23. The time limits set forth in the Rules of Appellate Procedure are not discretionary, as we observed in *Garza v. State*. However, the decision to invoke Rule 2(b) to suspend those time limits is discretionary. Consequently, the underpinnings for this Court's discussion in *Garza v. State* of Rule 2(b) and the suspension of appellate procedural time limits, relied on by the majority in the present case, were removed in *Olivo*.

### D. *State v. Garza* and the meaning and purpose of Rule 2(b).

#### 1. *State v. Garza*

Next, the majority draws on *State v. Garza*, 931 S.W.2d 560 (Tex.Crim.App.1996), to discern that "Rule 2(b) is to be reserved for cases where suspending a rule will *actually facilitate* processing the case through the appellate court." *Oldham*, 977 S.W.2d at 359 (emphasis in majority opinion). In *State v. Garza* the trial judge granted a motion for new trial which had already been overruled by operation of law. The defendant appealed his subsequent judgment, in which he re-

ceived a greater sentence than he had received in the first trial, claiming that the second judgment was void, since the trial court lacked authority to untimely grant the motion for new trial. The Court of Appeals agreed and set the second judgment aside. The Court of Appeals declined the State's invitation to invoke Rule 2(b) and suspend Rule 31(e)(3). We granted the State's petition for discretionary review and addressed the Rule 2(b) issue. We observed that, in essence, the State was complaining that the Court of Appeals abused its discretion in failing retroactively to re-confer jurisdiction on the trial court to grant the motion for new trial and the State appeared to contend that this case presented good cause as a matter of law, so that the Court of Appeals abused its discretion in refusing to suspend Rule 31(e)(3). *State v. Garza*, 931 S.W.2d at 562, 563. We rejected the State's argument for three reasons. First, the State failed to present even colorable good cause in the case. *Id.* at 563. Secondly, Rule 2(b) is phrased in permissive terms, and it does not contemplate such a thing as good cause as a matter of law so that a court of appeals would have no option but to suspend a rule. *Id.*

Finally, and most importantly, in our view Rule 2(b) does not authorize the retroactive suspension of rules governing events that have already occurred at the trial level before the record has been conveyed to the appellate court. True, on its face the rule allows suspension of provisions of "any" rule, even those governing motion for new trial. Nevertheless, the suspension of a rule is permitted only in accordance with the conditions enumerated in the rule, *viz:* "in the interest of *expediting a decision* or for *other* good cause shown[.]" This language signifies that what Rule 2(b) contemplates in the way of "good cause" is one of the relatively rare situations in which suspending a rule, rather than following it, will actually facilitate processing the case through the appellate court, by "expediting a decision" or otherwise. It does not authorize courts of appeals to reach back, after appeal has been perfected and the record filed, and alter the course of events at the trial court level,

as the State asked the court of appeals to do here. *Id.*

### 2. Limitations on use of Rule 2(b).

I agree with this Court's characterization of Rule 2(b) in *State v. Garza* as permissive, such that a court of appeals cannot be said to have abused its discretion by failing to invoke Rule 2(b). I also agree with this Court's conclusion in *State v. Garza* that Rule 2(b) may not be used to retroactively restore jurisdiction in the trial court, thereby making an action which was void *ab initio* valid.

In *State v. Garza*, we stated, "The only boundary we have set upon the courts of appeals in exercise of their Rule 2(b) discretion is to *preclude* them from suspending a rule under some circumstances. Thus, as the court of appeals here noted, this Court has held that Rule 2(b) does not authorize an appellate court to extend its own jurisdiction. *Garza v. State*, supra, 896 S.W.2d at 194." *State v. Garza*, 931 S.W.2d at 563. Unfortunately, in *State v. Garza* we failed to take notice of our opinion in *Olivo*.

As pointed out previously in this opinion, in *Olivo* we retreated from the dicta in *Garza v. State* concerning the operation of Rules 2(a) and 2(b). We explained in *Olivo* that neither Rule 2(b) nor Rule 2(a) prohibits an appellate court from suspending appellate procedural time limits. *Olivo*, 918 S.W.2d at 522–23. Nevertheless, in *Olivo*, which concerned the use of Rule 2(b) to suspend the time in which to file a motion for extension of time to file a notice of appeal under Rule 41(b), we did not end our examination of the role of Rule 2(b) at that point.

We stated that when a notice of appeal is filed within the fifteen-day period of Rule 41(b), but without a concomitant motion for extension of time, a court of appeals lacks jurisdiction to dispose of the purported appeal other than by dismissing it for lack of jurisdiction. *Olivo*, 918 S.W.2d at 523. We explained that in that situation, a court of appeals lacks jurisdiction over the purported appeal, so it lacks the power to invoke Rule 2(b) in an effort to obtain jurisdiction of the case. *Id.* Under that rationale, we reaffirm-

ed the statements from *Garza v. State*, 896 S.W.2d at 194, and *Jones*, 796 S.W.2d at 187, that a court of appeals may not utilize Rule 2(b) to create jurisdiction where none exists. *Olivo*, 918 S.W.2d at 523.

We failed to recognize in *State v. Garza* that although an appellate court may not utilize Rule 2(b) to create jurisdiction where none exists, the rationale for that prohibition was not based on the operation of Rules 2(a) and 2(b), as suggested by *Garza v. State*. Instead, our rationale in *Olivo* was that an appellate court in that instance lacks jurisdiction and, as a result, lacks the power to invoke Rule 2(b). Simply put, under the terms of Rule 2(b), there is no "particular case" over which the appellate court has jurisdiction so that it may use Rule 2(b). The boundary of Rule 2(b) previously established by this Court was created by a basic lack of jurisdiction over a case in which to invoke Rule 2(b).[4]

### 3. Construing Rule 2(b).

I believe this Court misconstrued Rule 2(b) in *State v. Garza*. I disagree with this Court's determination in *State v. Garza* that the language of Rule 2(b) signifies it is to be used only to facilitate processing a case through the appellate court by expediting a decision or otherwise. Rule 2(b) does not purport to limit its application to the facilitated processing of cases. The plain and logical construction of Rule 2(b) does not lead to the conclusion this Court reached in *State v. Garza*.

Literally, Rule 2(b) provides that an appellate court "may suspend the requirements

and provisions of any rule in a particular case" "in the interest of expediting a decision or for other good cause shown," "except as otherwise provided in these rules." By its very terms, Rule 2(b) may be used to suspend *any* rule, except as otherwise provided by the rules.[5] Rule 2(b) also literally provides that an appellate court may suspend any rule "in the interest of expediting a decision or for other good cause shown."

The rule contemplates two instances in which any rule may be suspended. The first is in the interest of expediting a decision, and the second is for other good cause shown. "Other" means "being the ones distinct from the those first mentioned." *State v. Johnson*, 939 S.W.2d 586, 587 (Tex.Crim.App. 1996) (citing The New Merriam–Webster Dictionary (1989)). "Other" obviously refers to "in the interest of expediting a decision." The plain and logical construction of the rule leads to the conclusion that "good cause shown" means something distinct from "in the interest of expediting a decision." In *State v. Garza* this Court accurately ascertained the rule's contemplated use "in the interest of expediting a decision." It plainly and logically follows that a suspension of a rule in this first instance is to facilitate the processing of a case through the appellate court. However, since "other good cause shown" necessarily means something distinct from "in the interest of expediting a decision," this Court's similar construction of Rule 2(b)'s contemplated use in that second instance does not follow. The rule does not provide "or for similar good cause shown." Had it done so, our interpretation of the rule

4. This is consistent with the ultimate holding of this Court in *Garza v. State*, the Rule 101 case. The filing of a petition for discretionary review vests this Court with jurisdiction, and courts of appeals are extended limited jurisdiction under Rule 50, formerly Rule 101, to act. If a court of appeals attempts to suspend that rule and give itself more time in which to issue an opinion on reconsideration, that encroaches on this Court's primary jurisdiction. That is far different from a situation in which a higher court suspends a rule to reinvest jurisdiction in a lower court, as the Court of Appeals sought to do in the present case.

5. I construe the phrase "except as otherwise provided by these rules" to refer to Rule 2(a), the

operation of which was explained in *Olivo*. Rule 2(a) applies to rules that specifically prohibit an appellate court from taking certain action, such as former Rule 74(*l*)(2) (appellant's failure to file a brief shall not authorize dismissal of appeal except as provided) and former Rule 83 (a judgment shall not be affirmed or reversed or an appeal dismissed for procedural defects or irregularities without allowing time to correct the defect), and to rules that require an appellate court to take certain action, such as former Rule 74(*l*)(2) (requiring appellate court to take certain steps when no appellant's brief is filed) and former Rule 90 (appellate court shall address every issue raised and necessary to final disposition of the appeal).

in *State v. Garza* would make sense. The rule means exactly what it says—a rule may be suspended for good cause shown other than in the interest of expediting a decision.

Therefore, except as otherwise provided by the rules, Rule 2(b) may be applied to *any* rule for good cause shown or to expedite a decision, provided the appellate court has jurisdiction over the case, *Olivo*, 918 S.W.2d at 523, and in doing so the appellate court does not encroach upon this Court's primary jurisdiction. *Garza v. State*, 896 S.W.2d at 195.

### ·E. Policy considerations.

The majority discusses policy considerations in support of its holding on the scope of Rule 2(b). The majority recognizes the appeal of the argument suggested by courts of appeals, that abating an appeal and allowing an out-of-time motion for new trial will have the ultimate effect of speeding up the appellate process. *Oldham*, 977 S.W.2d at 359–360. However, the majority concludes, "While in a small number of cases the litigation process may ultimately be shortened, we think that the associated delays and restarting of the appellate process upon such speculation makes this an improper use of Rule 2(b)." *Id.* at 360 (citing *Torres v. State*, 804 S.W.2d 918, 920 (Tex.App.—El Paso 1990, pet. ref'd), overruled on other grounds in *M.B. v. State*, 905 S.W.2d 344, 348 (Tex. App.—El Paso 1995, no writ)).

In *Torres*, the appellant sought an abatement of his pending appeal so he could develop a record to support his claim of ineffective assistance of counsel. The El Paso Court of Appeals denied the motion to abate because of the prohibition imposed by Rule 2(a), which this Court later rejected in *Olivo*, and because the appellant failed to establish good cause under Rule 2(b) by identifying specific, suspected deficiencies in trial counsel's performance. *Torres*, 804 S.W.2d at 920. The Court of Appeals stated, "[W]e are not disposed to encourage a practice of disrupting the orderly and prompt flow of direct appeals by what could well become a routine defense practice of seeking such abatement for random trolling of the record for signs of inef-

fective assistance." *Id.* The El Paso Court of Appeals did not conclude that, but for Rule 2(a), the use of Rule 2(b) to abate an appeal and to remand to the trial court would improperly disrupt the appellate process. The court concluded that abating and remanding on a general request, which does not specify counsel's suspected deficiencies, for the purpose of determining whether the appellant received effective assistance of counsel, would lead to the improper disruption of the appellate process. In other words, the El Paso Court of Appeals did not find that the appellant showed good cause for suspending the rules, and that court declined to exercise its discretion by suspending the rules under Rule 2(b), had the court believed Rule·2(a) did not prohibit that use of Rule 2(b).

The majority focuses on the appellate process as an end itself, rather than as a means to an end. The majority believes that Rule 2(b) may be used when the interests of justice compel speeding up the appellate process, but the majority rejects the notion that the interests of justice also compel the correct result in an appeal. *Oldham*, 977 S.W.2d at 360 ("[Rule 2(b)] should not be used as a method to lengthen procedural time limits absent truly extraordinary circumstances, even in an effort to protect the substantive rights of litigants"). I disagree with this approach which elevates procedure over substance and the resulting glorification of procedure for procedure's sake.

Even under the majority's economic cost-benefit analysis of Rule 2(b), the majority accedes that the litigation process may ultimately be shortened in a small number of cases if courts of appeals were authorized to restore motion for new trial jurisdiction in trial courts. The majority, however, believes that the costs of delay and restarting the appellate process are too high.

As a historical matter, the suspension of appellate rules was authorized prior to the adoption of the Texas Rules of Appellate Procedure in 1986. Rule 2(b) was derived from Rule 4 of the Rules of Post Trial and Appellate Procedure in Criminal Cases, which provided in part, "In the interest of expediting a decision or for other good cause

shown, a court of appeals or the Court of Criminal Appeals may, except as otherwise provided in these rules, suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its discretion." This Court referred to former Rule 4 on several occasions. *McGee v. State,* 711 S.W.2d 257, 260 (Tex.Crim.App.1986); *Lopez v. State,* 708 S.W.2d 446, 447 n. 1 (Tex.Crim.App.1986) (circumstances of *Lopez* explained in *Shanks v. State,* 710 S.W.2d 585, 587 (Tex.Crim.App. 1986) (Clinton, J., concurring)); *Mead v. State,* 656 S.W.2d 494 (Tex.Crim.App.1983) (Campbell, J., dissenting) (discussing procedural circumstances of the case); and *Reyes v. State,* 630 S.W.2d 277, 278 (Tex.Crim.App. 1982). Of these opinions, *Lopez* is the most instructive. In that case, this Court invoked Rule 4; suspended former Rule 309(f), which provided that a party may file a motion for rehearing if the Court delivers an opinion on rehearing that changes the disposition of the cause from the disposition on original submission; and granted the State leave to file a second motion for rehearing after denying the State's initial motion for rehearing. *Lopez,* 708 S.W.2d at 447 n. 1; *Shanks,* 710 S.W.2d at 587 (Clinton, J., concurring) (explaining what happened in *Lopez* ). The majority's view of the scope of Rule 2(b), as being limited to shortening, not lengthening, time limits and as a means of speeding up the appellate process, is inconsistent with this Court's use of former Rule 4 in *Lopez.*

Also, prior to the adoption of the Texas Rules of Appellate Procedure, courts of appeals had authority exceeding their current authority relating to the extension of time in which to file a notice of appeal. Former Art. 44.08(e), V.A.C.C.P., provided, "For good cause shown, the court of appeals may permit the giving of notice of appeal after the expiration of [the] 15 days [in which notice of appeals must be filed under Art. 44.08(b) ]." Now, a court of appeals may grant a motion for extension of time to file a notice of appeal only if the notice of appeal and the motion are filed within fifteen days after the deadline for filing the notice of appeal. Tex. R.App.P. 26.3. I mention former Art. 44.08(e) to show that giving appellate courts authority to exercise discretion in allowing untimely appellate events is not a completely new concept.

Before the extension of criminal jurisdiction to courts of appeals in 1981, former Art. 40.09(9), V.A.C.C.P., required a defendant to file the appellate brief in the trial court. The trial court had thirty days in which it was required to determine from the briefs, and oral argument if desired by the trial court, whether the defendant should be granted a new trial. Former Art. 40.09(12). Judge Morrison's commentary to former Art. 40.09 states that "if a trial judge were given an opportunity to study the record of the trial over which he had presided, read briefs and hear argument on the points raised, in many cases he would recognize the fact that reversible error was in the case and that he would promptly grant a new trial and set the case down at once for retrial, thus avoiding the inherent delay occasioned by an appeal and protecting his appellate record of which so many able trial judges are justifiably proud." Former Art. 40.09, V.A.C.C.P., Interpretive Commentary (Vernon's 1979). Commenting on this procedure, Judge Onion observed, "While the time between conviction and appeal will be undoubtedly lengthened in some cases, the number of cases appealed should be reduced and many unnecessary reversals eliminated." Former Art. 44.09, Special Commentary (Vernon's 1979). This procedure was abandoned when courts of appeals were given criminal jurisdiction. Nevertheless, the cost-benefit policy considerations espoused by Judge Onion and Judge Morrison remain valid and are inconsistent with the majority's analysis of policy considerations in the present case.

As a final historical note, extensions of time for meeting appellate deadlines were authorized on a showing of good cause. Former Art. 40.09(13), V.A.C.C.P. Moreover, our current Rules of Appellate Procedure specifically allow extensions of time for certain appellate events. Tex.R.App.P. 10.5(b), 21.6, 26.3, 31.1, 38.6(d), 49.8, 68.2(c), and 79.6. Similarly, other Rules of Appellate Procedure have the effect of delaying resolution of appeals, some of which are designed to protect the appellant's substantive rights, such

as the right to effective assistance of counsel on appeal. Tex.R.App.P. 9.4(i), 18.7, 19.1, 34.6(e)(3), 35.3(c), 38.8(b), and 50. Additionally, there are no time constraints regarding when appellate courts must issue a decision on original submission or on rehearing.

Although the speedy resolution of appeals is a valid policy consideration, the Rules of Appellate Procedure are not designed solely to meet that goal. Apparently, other policy considerations were taken into account and resulted in rules which have the effect of delaying an appeal for some other purpose, such as the protection of an appellant's rights. See, e.g., Rule 38.8(b).

The majority's cost concerns are factored into Rule 2(b). Courts of appeals have *discretion* in deciding whether to use Rule 2(b) to suspend the rules pertaining to the filing of motions for new trial. If a court of appeals does not believe that good cause is shown, or if a court of appeals simply declines to exercise its power under Rule 2(b), perhaps based on the speculative nature of the underlying reasons asserted by an appellant, the court is not compelled to suspend the rules. *State v. Garza,* 931 S.W.2d at 563 (a court of appeals is not bound to employ Rule 2(b) even on a showing of good cause).

The majority cites numerous cases in which the courts of appeals have considered whether Rule 2(b) could or should be used. *Oldham,* 977 S.W.2d at 356–358. In my view, the courts of appeals that have considered using Rule 2(b) have demonstrated they use it sparingly and properly, reserving Rule 2(b) for that small number of cases which might end up in the black on the majority's accounting ledger. The courts of appeals have followed this Court's admonition in *State ex rel. Cobb v. Godfrey* that the suspension of rules is a serious matter and is not to be taken lightly.[6] Some have used Rule 2(b) to allow for late notices of appeal, but we resolved that issue in *Olivo.* The courts of appeals have demonstrated that they are cognizant of the cost-benefit concerns expressed by the majority and that those concerns are weighed in deciding whether to take the extraordinary step of invoking Rule

2(b) to suspend the rules and permit an out-of-time motion for new trial to be filed. See, e.g., *Tuffiash v. State,* 878 S.W.2d 197, 201 n. 2 (Tex.App.—San Antonio 1994, pet. ref'd) (after considering whether a claim of newly-discovered evidence is cognizable on habeas corpus, court of appeals concluded it was more efficient to have the issue of whether a forensic serologist committed perjury decided then, rather than many years later); *Bowler v. State,* 822 S.W.2d 334, 335 (Tex. App.—San Antonio 1992, review refused) (claim of ineffective assistance of counsel may be raised by post-conviction writ of habeas corpus, so court of appeals declined to use Rule 2(b) to suspend the rules and permit out-of-time motion for new trial); *Harris v. State,* 818 S.W.2d 231, 233 (Tex.App.—San Antonio 1991, no pet.) (a factor to consider when deciding whether to allow out-of-time motion for new trial under Rule 2(b) is whether the issue of newly-discovered evidence that the undercover informant in a drug case was subsequently indicted for perjury in other cases, and that district attorneys subsequently dismissed over seventy cases in which the witness was an undercover operative, can serve as a basis for habeas corpus relief).

### F.   Conclusion on Rule 2(b) out-of-time motion for new trial issue.

For the foregoing reasons, I believe Rule 2(b) authorizes a court of appeals to suspend former Rule 31(a)(1) on a showing of good cause, and to restore limited jurisdiction in the trial court for the purpose of an out-of-time motion for new trial. I agree with the rationale of the first appellate court to utilize Rule 2(b) in that manner, *Harris v. State,* 818 S.W.2d 231 (Tex.App.—San Antonio 1991, no pet.). That court's rationale is consistent with this Court's determination of how Rule 2(b) operates in *Olivo.* Neither *State ex rel. Cobb v. Godfrey, Tallant v. State, Garza v. State, State v. Garza,* nor policy considerations compel the majority's holding. I therefore dissent to this Court's resolution of this issue.

---

6. For a survey of case law development in this area among the courts of appeals, see Dix and

Dawson, Criminal Practice and Procedure, § 43.349 (Texas Practice 1995).

### G. Meaning of the majority's holding on the Rule 2(b) issue.

Notwithstanding my disagreement with the majority's ultimate view of the scope of Rule 2(b), the majority's conclusion regarding Rule 2(b) is puzzling. After exploring courts of appeals decisions on Rule 2(b), this Court's decisions on the rule, and policy considerations, the majority arrives at the conclusion that Rule 2(b) may not be used to lengthen procedural time limits absent truly extraordinary circumstances. *Oldham*, 977 S.W.2d at 360. Did the Court of Appeals err in this case because truly extraordinary circumstances were not present? Does a court of appeals have authority to suspend the rules and permit an out-of-time motion for new trial to be filed if there are truly extraordinary circumstances? May Rule 2(b) be used to lengthen procedural time limits only if they do not pertain to motions for new trial, as long as there are truly extraordinary circumstances for doing so? Is the question of whether there are truly extraordinary circumstances present really a question about whether good cause is shown? If so, will this Court review courts of appeals' determinations regarding good cause, despite this Court's indication to the contrary in *State v. Garza?*

### V. The denial of counsel issue.

After the majority decides the Court of Appeals erred in utilizing Rule 2(b), the majority seems to recognize that courts of appeals have authority to restore a trial court's jurisdiction to entertain a motion for new trial even without the use of Rule 2(b). Of course, that was the extent of the issue presented in the motion for rehearing—whether courts of appeals have that authority. The majority hints at an answer to the actual issue posed by the State, but expressly leaves it unaddressed.

Nevertheless, the majority plows onward and reviews the Court of Appeals' holding that Appellant was denied counsel. That

issue is not presented in the State's motion for rehearing, and we did not grant rehearing on the Court's own motion. The dismissal of a petition as having been improvidently granted is tantamount to having refused the petition in the first place. See Tex.R.App.R. 69.3, former Rule 202(k). A motion for rehearing after the refusal of a petition had to have been limited to intervening circumstances of substantial and controlling effect. Former Tex.R.App.R. 230(b) (current Rule 79.2(c) provides that a motion for rehearing of an order that refuses or dismisses a petition for discretionary review may be grounded only on substantial intervening circumstances). The motion for rehearing claimed that once the trial court lost jurisdiction for a motion for new trial, the Court of Appeals lacked authority to restore jurisdiction in the trial court for a motion for new trial. The State cited *Olivo* as the intervening circumstance. *Olivo* and the State's argument in the motion for rehearing do not pertain to whether the record shows that Appellant was denied counsel.

I disagree with the majority's decision to address the denial of counsel issue, which is not before this Court. If this Court is going to hold that the courts of appeals have been wrong in using Rule 2(b) to allow out-of-time motions for new trial, this Court should at least do so in a case in which we follow our rules ourselves.[7]

### VI. Conclusion.

For the foregoing reasons, I respectfully dissent to the majority's decision to reverse the Court of Appeals' judgment.

---

7. This is not to say that the question of whether a record such as the one in the present case demonstrates that an appellant has been denied counsel is not worth reviewing. If this Court is inclined to address that issue, it should do so in a case in which that issue is properly before this Court. We have a case pending that squarely presents the issue, although we have not yet acted on the petition for discretionary review: *Stamper v. State*, No. 02–96–486–CR (Tex.App.— Fort Worth, delivered February 5, 1998), PDR No. 450–98.