NO. 07-00-0109-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 10, 2000



______________________________




WILLIAM CASH LOVE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 64th DISTRICT COURT OF SWISHER COUNTY;



NO. B3253-9907CR; HONORABLE JACK MILLER, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ON MOTION TO SUSPEND OPERATION OF TEX. R. APP. P. 21.8


 Appellant William Cash Love applies by motion for this court to suspend operation
of Texas Rule of Appellate Procedure 21.8 (1) and to thereby extend the time for the trial
court to rule on his Amended Motion for New Trial before it is overruled by operation of
law. We deny the motion.

FACTUAL AND PROCEDURAL BACKGROUND

 Appellant alleges by a motion filed with the clerk of this court on April 13, 2000, that
sentence was imposed in this matter on January 29, 2000. He further alleges that notice
of appeal was timely filed, motion for new trial and amended motion for new trial were
timely filed, and that hearing was held on the amended motion for new trial on April 12,
2000. In his motion, appellant alleges that attorneys for the State and appellant agreed
to a schedule for presenting a transcript of the hearing on the motion for new trial and
briefs respecting positions of the parties to the trial court, and that the trial court accepted
the agreement in lieu of making a ruling on appellant's motion for new trial at the time of
the hearing on April 12, 2000. The agreed schedule provided for the trial court to rule on
appellant's amended motion for new trial sometime after May 15, 2000. 

 Rule 21.8(a) and (c) result in appellant's amended motion for new trial having been
overruled by operation of law upon the expiration of 75 days following January 29, 2000,
when sentence was imposed, unless the trial court ruled on the motion within such 75-day
period. The 75-day period expired on April 13, 2000. 



LAW

 In Oldham v. State, 977 S.W.2d 354 (Tex.Crim.App. 1998), the Court of Criminal
Appeals considered a cause in which the court of appeals suspended the provisions of
then Rule 31(a)(1) which required a motion for new trial to be filed within 30 days after
sentencing of the defendant. The suspension was under provisions of Rule 2(b), which
was the predecessor rule to current Rule 2. The suspension was based on "good cause"
in that appellant Oldham had allegedly been deprived of counsel in violation of her
constitutional rights, and had not filed a motion for new trial in regard to her forgery
conviction. The court of appeals abated and remanded the case so that appellant could
file a motion for new trial to assert the constitutional violation. Oldham v. State, 977
S.W.2d at 355-57. The Court of Criminal Appeals, in reversing the decision of the court
of appeals, stated that 

 In essence, the Court of Appeals used Rule 2(b) to extend the time limit for
the filing of the appellant's motion for a new trial some two years and eight
months, this being the time from the appellant's sentencing to the date of the
Court of Appeals' decision. . . . We believe the Court of Appeals was in error
to rely on Rule 2(b) as a mechanism to extend the time limits for the filing of
a motion for a new trial imposed by Rule 31(a)(1). . . . Rule 2(b) is in
essence an escape valve to be used by an appellate court when a case
becomes unduly stalled or delayed in the appellate process due to
procedural rules, and the interests of justice compel speeding up the
process; although Rule 2(b) may be used to shorten the time limits when
justice so requires, it should not be used as a method to lengthen procedural
time limits absent truly extraordinary circumstances, even in an effort to
protect the substantive rights of litigants. Oldham v. State, 977 S.W.2d at
356, 360.


 In State v. Riewe, No. 699-99 (Tex.Crim.App. Mar. 8, 2000), the court reiterated its
statements in Oldham to the effect that Rule 2 is not to be used to enlarge timeframes
established by the appellate rules for appeals: "[Rule 2] was not intended to be used to
lengthen procedural time limits, even in an effort to protect the substantive rights of
litigants."

ANALYSIS

 Granting appellant's motion would expand the time limits established by the TRAP
for appellant's appeals process. As Rule 2 has been interpreted in Oldham and Riewe,
we cannot suspend the operation of Rule 21.8 and extend the time for the trial court to rule
on appellant's amended motion for new trial under the circumstances presented by
appellant. Thus, assuming appellant, the State, and the trial judge agreed on the proposal
as described in appellant's motion, we still must, and therefore do, deny appellant's
motion. 

 Per Curiam


Do not publish.

1. Further references to the rules of appellate procedure will be by reference to "Rule"
or "TRAP."


the robbery, Mr. and Mrs.
Conner were made to lie on the floor. The shotgun bearing robber (whom Mr. Conner
identified as “this defendant here”) held his gun to the back of Mrs. Conner’s head and the
handgun bearing robber held his gun to the back of Mr. Conner’s head. At one point, as
a means of intimidation, the handgun bearing robber discharged his firearm, however, no
one was injured. 
          The robbers immediately focused on a filing cabinet containing three separate bags
of money containing approximately $35,000 in cash. After Mr. Conner handed over two
of the three bags of money, the robbers left, grabbing Mrs. Conner’s purse on the way out. 
Mr. Conner observed the two robbers flee the scene of the crime in a newer model gray
Jeep Cherokee with tinted windows; however, he was unable to read the vehicle tag
number. The robbers left no physical evidence or fingerprints which tied Appellant to the
scene of the crime. 
          While the robbery was taking place, Jesse Conner, the Conners’ nine year old
grandson, hid under his grandparents’ bed. From there he observed one of the robbers
wearing a shoe, “kind of like a tennis shoe,” bearing an “S” on the side of the shoe.
           After the robbers left, but before calling 911, Mrs. Conner called her daughter, Mayla
Arreola. She suspected the robbers had gained information from Mayla pertaining to their
residence and the stash of money because, several days earlier, while the Conners were
out of town, Mr. Conner had contacted Mayla and asked her to count the cash which was
contained in the bags located in the filing cabinet. 
           Initially, Mayla denied telling anyone about the money in the Conner home;
however, she later admitted telling a friend, Tiffeni Martinez, the substance of her
conversation with her father, including the existence and location of the money. Phone
records introduced by the State showed that in the days just prior to the robbery, there
were numerous cell phone conversations between Tiffeni’s husband, Andrew Martinez, and
his cousin, Carlos Cordova. 
          A police investigation, initiated by a Crime Stoppers tip, revealed that Appellant and
Cordova were close friends and that the two were often seen in the company of Appellant’s
cousin, Adam Aguilar. At trial, Danielle Holmes testified that on May 20, 2006, the evening
prior to the robbery, Appellant, Cordova, and an unidentified third person, came to her
residence to visit with Woody (last name unknown, but later identified as Dustin Lee Allen). 
The three men had arrived in a gray, newer model Jeep Cherokee. After a conversation
with Cordova, Woody told Danielle that he was going to Pampa to get some money and
he would be back in a couple of hours; however, Holmes prevented Woody from leaving
with the others. The next morning, “before daybreak,” Cordova came back and told Woody
that “it just didn’t go as planned.” A few days later, Holmes learned that Appellant,
Cordova, and Aguilar were “irritated and agitated” because the police had questioned them
about what “happened in Pampa on May the 21st.” Holmes also testified that, after the 21st,
Carlos and Appellant were wearing “nice,” “flashy” clothes.
          Another witness, Priscilla Badillo, the mother of Adam Aguillar’s daughter, testified
that she overheard Appellant “talking about him and Carlos and something about Carlos’s
cousin and Pampa, money, guns, kids, stuff like that.” Based on this information and its
similarity to news reports about the Pampa home invasion, Priscilla made the Crime
Stoppers tip. Lorena Manriquez, the mother of Appellant’s children, testified that Appellant
owned a pair of Sketcher boots that had an “S” on the side of it. During the investigation,
none of the clothing the robbers wore was recovered and none of the money taken was
recovered. No comparable fingerprints or shoeprints were found and no impressions of
the tire prints from the place where the Jeep Cherokee departed were taken.
          After the State rested, the defense offered testimony to the effect that Appellant
attended a Quinceañera


 in Amarillo for his cousin on the afternoon and evening of May
20, 2006. Testimony from Gilbert Maldonado, Appellant’s cousin and brother of the
Quinceañera honoree, indicated that Appellant stayed at the party “probably ‘til four o’clock
[a.m.],” the morning of May 21st. Manriquez testified that she and Appellant left the party
between 3:00 to 4:00 a.m. and that she was driving since he was drunk. She further
testified that Appellant stayed in bed that morning until approximately 10:00 to 10:30.
Discussion
Issue Three - Factual Sufficiency
          By his third issue, Appellant contends the evidence is factually insufficient to sustain
the verdict against him. More specifically, Appellant contends that, not only is the State’s
evidence tending to connect him with the offenses extremely weak, his evidence tending
to establish an alibi is such that, when combined, they render the jury’s verdict manifestly
unjust.

Standard of Review-Factual Sufficiency Review
          When conducting a factual sufficiency review, we begin with the assumption that the
evidence is legally sufficient under Jackson v. Virginia. See Laster v. State, 275 S.W.3d
512, 518 (Tex.Crim.App. 2009). Evidence that is legally sufficient, however, can be
deemed factually insufficient in either of two ways: (1) the evidence supporting the
conviction is so weak that the jury’s verdict seems “ clearly wrong and manifestly unjust,”
“shocks the conscience,” or “clearly demonstrates bias,” or (2) considering contrary
evidence, the factfinder’s verdict is “against the great weight and preponderance of the
evidence.” Id.; See also Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App. 2008);
Watson v. State, 204 S.W.3d 404, 426 (Tex.Crim.App. 2006); Clewis v. State, 922 S.W.2d
126, 135 (Tex.Crim.App. 1996). In a factual sufficiency review, the reviewing court must
consider the probative weight of all of the evidence in a neutral light (i.e., without the prism
of “in the light most favorable to the prosecution”). Steadman v. State, 280 S.W.3d 242,
246 (Tex.Crim.App. 2009); Laster, 275 S.W.3d at 518.
          In reviewing a jury’s decision we are mindful that the jury is the sole judge of the
credibility of the witnesses and the weight to be given testimony, Lancon v. State, 253
S.W.3d 699, 705 (Tex.Crim.App. 2008). A jury is entitled to disbelieve some or all of a
witness’s testimony, even when that testimony is uncontradicted. Hernandez v. State, 161
S.W.3d 491, 501 (Tex.Crim.App. 2005). Therefore, appellate courts should afford almost
total deference to a jury’s decision when that decision is based upon an evaluation of
credibility, Lancon, 253 S.W.3d at 705; because, being present to hear the testimony, as
opposed to relying upon a cold record, the jury is in the better position to judge the
credibility of the witness. Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). 
          In conducting a factual sufficiency review, an appellate court must exercise its
factual sufficiency jurisdiction with great deference to the jury’s findings and we cannot
conclude that the conviction is factually insufficient simply because we might otherwise
disagree with the jury’s verdict. Watson, 204 S.W.3d at 416-17; Cain v. State, 958 S.W.2d
404, 407 (Tex.Crim.App. 1997). Basically, the only question to answer in a factual
sufficiency review is: “Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt?” See Grotti, 273 S.W.3d at 283 (citing
Watson, 204 S.W.3d at 415). 
          As directed by the Court of Criminal Appeals, in conducting our analysis we are
guided by at least three “basic ground rules”: (1) we must consider all of the evidence in
a neutral light, as opposed to in a light most favorable to the verdict;


 (2) we may only find
the evidence factually insufficient when necessary to “prevent manifest injustice”;


 and (3)
in reversing a conviction we must explain why the evidence presented is too weak to
support the verdict or why the conflicting evidence greatly weighs against the verdict.


 
Laster, 275 S.W.3d at 518; Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
Analysis
          Our analysis of Appellant’s factual sufficiency issue requires that we address both
ways in which evidence can be determined to be factually sufficient. On the one hand,
Appellant contends the evidence supporting the verdict is, in and of itself, too weak to
support the jury’s verdict; whereas, on the other hand, Appellant also argues there was
conflicting evidence that renders the jury’s verdict factually insufficient. We will address
each argument separately.
Evidence Supporting Verdict Too Weak
          Appellant contends the evidence was factually insufficient because the evidence
supporting the verdict was just too weak. In support of this argument, he contends the
verdict is “clearly wrong or manifestly unjust or against the great weight and preponderance
of the evidence” because there is no physical evidence tending to connect Appellant to the
crime. Circumstantial evidence is as probative as direct evidence in establishing the guilt
of the accused. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). While each
fact need not point directly and independently to the guilt of the accused, the cumulative
force of circumstantial evidence alone may be sufficient to support a conviction. Id. 
Although the Conners were unable to identify their robbers, Appellant never admitted his
guilt, and no physical evidence was ever obtained directly connecting him to this offense,
we find that the cumulative force of the above described circumstantial evidence is
sufficient to make that connection. Conflicting Evidence
          Appellant also contends that other evidence presented tended to cast doubt on the
jury’s verdict. Specifically, having conceded that the evidence tending to connect Carlos
Cordova to the offense was much greater, Appellant postulates the idea that he could not
have been the other robber because he and Cordova were not brothers and there was
testimony that when one of the robbers asked the other robber where the Conners’
grandchild went, the other robber responded, “I don’t know, brother, I don’t know.” He also
suggests that he could not have been at the residence of Danielle Holmes on May 20th,
because he was at the Quinceañera, and he could not have been at the Conners’
residence on May 21st, at 9:00 a.m., because he was at home in bed.
          “Uncontradicted testimony” is a concept totally different from “undisputed facts.” 
Evans, 202 S.W.3d at 164. Merely because testimony is uncontradicted does not mean
that its opponent, in this case the State, has assumed or admitted the truth of that fact, or
that it concerns a physical fact that cannot be denied. A jury is entitled to determine which
uncontradicted facts it chooses to believe and what inferences it chooses to draw from
those facts, but it is not required to do either. Id. at 165.
          Use of the term “brother” by one robber does not lead to the undeniable conclusion
that the two perpetrators were “brothers” by blood or marriage. Furthermore, Appellant’s
presence at the Quinceañera does not exclusively eliminate the possibility that he was also
at Danielle’s residence. Finally, as to his alibi defense, the jury was not required to accept
that testimony. Considering the conflicting evidence, and giving appropriate deference to
the jury’s verdict and its right to believe or disbelieve that evidence and the inferences to
be drawn therefrom, we cannot say that the jury’s verdict is “against the great weight and
preponderance of the evidence.” 
          Considering all of the evidence in a neutral light, we conclude the jury was rationally
justified in finding guilt beyond a reasonable doubt. Issue three is overruled.
Issue Four - Hearsay
          By his fourth issue, Appellant contends that three statements introduced into
evidence during Danielle’s testimony were hearsay: (1) that, after talking to Carlos Cordova
prior to the robbery, Woody told her “I’m just going to get some money,” (2) that when
Cordova later returned, Woody asked him “Did it go through?,” and (3) that in response to
that question, Cordova replied, “It just didn’t go as planned.” Appellant further contends
that these statements are not subject to the “in furtherance of a conspiracy” or the
“statement against interest” hearsay exceptions, and that their erroneous admission
substantially influenced the verdict. In response, the State contends the first statement
was a statement concerning future conduct, and thus not hearsay, and the second and
third statements were statements against interest. The State also contends Appellant
waived any objection to the third statement by failing to make a contemporaneous
objection. Analysis
          Appellate courts review decisions regarding the admissibility of evidence under an
abuse of discretion standard. See Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Crim.App. 1991). Because the trial court is in the best position to decide questions
fo admissibility, appellate courts should uphold the trial court’s admissibility decision when
that decision is within the zone of reasonable disagreement. Id. An appellate court may
not reverse a trial court’s decision regarding the admissibility of evidence solely because
the appellate court disagrees with that decision. Id.; Cameron v. State, 241 S.W.3d 15,
19 (Tex.Crim.App. 2007). 
          “Hearsay” is an out-of-court statement “offered in evidence to prove the truth of the
matter asserted.” Tex. R. Evid. 801(d). A statement is not hearsay, by definition, if it is
offered against a party and is a statement by a co-conspirator of that party, made during
and in furtherance of the conspiracy. Tex. R. Evid. 801(e)(2)(E). Furthermore, a statement
which, at the time of its making, so far tended to subject the declarant to criminal
responsibility that a reasonable person in declarant’s position would not have made the
statement unless believing it to be true, is an exception to the general hearsay rule. Tex.
R. Evid. 803(23).
          The relevance of Woody’s statement that he was going to get some money was
that, if true, it tended to prove that Woody had joined a conspiracy, consisting of Cordova,
Appellant, and an unidentified third person, to obtain some money, in Pampa, by some
method, on the night of May 20, 2006; thereby inferring that Appellant also intended the
same thing. As such, it was the truth of his future intent that had any relevance. 
Statements concerning a declarant’s then existing state of mind, including his future intent
or plan, is an exception to the hearsay rule. See Texas Rules of Evidence 803(3); Saldivar
v. State, 980 S.W.2d 475 (Tex.App.–Houston [14th Dist.] 1998, pet. ref’d).
          Concerning Woody’s question, “Did the deal go through?,” the challenged statement
is not hearsay because it was not offered in evidence to prove the truth of the matter
asserted. A purely contextual out-of-court statement that is nothing more than a question
is not hearsay. Fischer v. State, 207 S.W.3d 846, 850 n.5 (Tex.App.–Houston [14th Dist.]
2006, aff’d on other grounds 252 S.W.3d 375 (Tex.Crim.App. 2008). 
          Finally, Cordova’s response, “It just didn’t go as planned,” inferentially tends to show
that Cordova committed or attempted to commit the offense that was the subject of the
previously discussed conspiracy, i.e., to obtain some money, in Pampa, by some method. 
When combined with other evidence, the probative force of which was to show that an
aggravated robbery was committed, in Pampa, by Cordova, it can be said that, at the time
of its making, the statement so far tended to subject the declarant (Cordova) to criminal
responsibility that a reasonable person in declarant’s position would not have made the
statement unless believing it to be true. Accordingly, the trial court did not err in admitting
the three challenged statements.
Issue Five - Witness’s “Sense” Testimony
          By his fifth and final issue, Appellant contends the trial court erred by allowing a
witness to testify as to the “sense” she had that a weapon was in the vehicle occupied by
Appellant on the evening prior to the robbery. Appellant further contends the error
substantially influenced the jury’s verdict, calling for a reversal of his conviction. 
Analysis
          Danielle Holmes testified that she was present the evening before the robbery when
Appellant, Carlos Cordova, and an unidentified third person came to her house and visited
with Woody about a “deal” in Pampa. When asked if she saw anyone with a gun, Holmes
replied:
You can hear it but, you know, it could have been some change, it could
have been whatever but you can, you know, – I don’t know how to explain it.
 
When then asked if she had a “sense” that there may have been weapons present, over
Appellant’s objection, she replied:
What I’m trying to say is you couldn’t tell what it was but you can see, you
know, it was something but you don’t know what it was, so I can’t really say
if it was a gun or a knife or whatever, but you can tell it was something – 
 
          Here, Holmes was permitted to give her personal opinion (or “sense”) as to whether
there was a weapon present when Appellant, Cordova, and a third party visited with Woody
concerning a “deal” that was to take place in Pampa. Pursuant to Texas Rule of Evidence
701, a lay witness may testify in the form of an opinion or inference if that opinion is (1)
rationally based on the perception of the witness and (2) it is helpful to a clear
understanding of the witness’s testimony or the determination of a fact issue. Scott v.
State, 222 S.W.3d 820, 827 (Tex.App.–Houston [14th Dist.] 2007, no pet.). The challenged
testimony was nothing more than Holmes’s opinion as to whether a weapon was present,
rationally based upon her auditory perception. It was helpful to a clear understanding of
her reasons for persuading Woody not to become involved in the events of that evening. 
The trial court’s decision to allow that testimony falls within the zone of reasonable
disagreement. Issue five is overruled.
Conclusion
          Accordingly, the trial court’s judgments are affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice





Do not publish.