# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00650-CR

**Harvey Basey, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. 9-02-4157, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Harvey Basey of aggravated sexual assault of a child and indecency with a child by contact. Tex. Pen. Code Ann. '' 22.021(a)(1)(B)(i) (West Supp 2004), 21.11(a)(1) (West 2003). The court assessed punishment at life in prison for the charge of aggravated sexual assault and 20 years for the indecency charge, to run concurrently. Basey appeals both the conviction and sentence, contending that he was denied the effective assistance of counsel. We will affirm the judgment.

### Factual Background

Basey was convicted of two charges of sexual misconduct against his four-year-old son J.B. At the time of the crime, Basey was married to J.B.=s mother, Michelle Kovach. The two had five children

living with them, including J.B.  The family lived in Austin until December 1999, when they moved to Ohio.  J.B. reported the sexual abuse to his mother in June 2000, after she asked him if anybody had been Amessing@ with him.  Kovach testified that she asked him this question because there had been a lot of abuse in the family.  Kovach stated that J.B. initially said his cousin John had messed with him.  When Kovach asked if there was anyone else, J.B. responded, ADaddy said if I tell you, I will get into trouble.@ Kovach then testified that J.B. admitted that Basey had Amessed@ with him.  J.B. informed her that Basey had put his penis in J.B.=s butt and that Basey had touched J.B.=s penis.

The following day Kovach took J.B. to the Department of Human Services where he was interviewed by social worker Patricia Dunlap.  The interview was monitored through a double glass window by Kovach and Detective James Romph of the Geauga County Ohio Sheriff=s Office.  Dunlap testified that she first determined in the interview that J.B. was capable of distinguishing between the truth and a lie and then asked J.B. what his father had done to him.  Dunlap testified that J.B. reported that his father placed a straw where he pees and that it really hurt.  J.B. told her this happened at least eight times.  He asked his father to stop, but his father responded, AI=m your father and I can do what I want.@ Dunlap testified that J.B. also reported there was oral sex at least two times and that his father inserted his penis into J.B.=s rectum.  J.B. reported that his father told him to pull down his pants and touch his ankles and that his father was wearing his clothes, but dropped his pants around his ankles when the penetration occurred.  J.B. told Duncan that the abuse occurred at Grandma Basey=s house in Texas.  It was established during trial that Grandma Basey is Basey=s mother who resides in Travis County.

2

J.B. testified at Basey=s trial, outside the presence of the defendant via closed circuit television. He was six years old at the time of his testimony. He testified that he remembered telling his mother that his dad was doing bad things to him and that his dad told him not to tell anybody. He said that the bad things happened in his room at Grandma Basey=s house. J.B. testified that the bad things his father did to him did not hurt. He denied that anything happened with a straw and only agreed that his dad touched his private parts with his hands on one occasion. On cross- examination, J.B. agreed that his father had spanked him and hit him with a belt.

Following J.B.=s interview with Dunlap at the Department of Human Services, Detective Romph went to the Baseys= home and spoke with Basey. Romph testified that it appeared that Basey was packing his bags in order to leave. Basey agreed to go with Romph to the police station to talk. Once at the police station, Romph conducted a videotaped interrogation of Basey. A videotape of the entire interrogation was ultimately introduced at trial. In the video, Basey initially denied having abused J.B. and agreed to take a Atruth verification test.@ Romph administered the test on his laptop computer and informed Basey that the test showed he was lying. After further interrogation, Basey admitted to the Astraw incident,@ placing the straw into the opening of J.B.=s penis and blowing through it. Basey stated throughout the interview that if J.B. said that he had done something to him, then he would believe J.B.. Basey also repeatedly admitted that he had made a mistake and that he needed treatment or counseling.

3

J.B.=s family doctor in Ohio, Carrol Noall, testified that she examined J.B. soon after the abuse was reported. Noall testified that J.B.=s mother reported the abuse and that J.B. was having difficulty with loss of urine and stool control. She testified that J.B. became very frightened and wet is pants when she examined his genital area. Because of the report of abuse, Noall examined J.B.=s rectal area. She testified that she saw a triangular shaped scar going into the rectal area and that the shape of the scar was indicative of penetration. There was a sexually transmitted wart at the corner of the scar. Noall explained that the scar and wart were consistent with penetration by an adult penis.          Vivian Lewis-Heine, an expert in the treatment of sex offenders and victims of abuse, testified generally regarding the characteristics of sex offenders and abuse and answered hypothetical questions based on the facts of the case. She testified that a delay in reporting sexual abuse was normal and that details of the abuse like those provided by J.B. indicate that the report was reliable. She also testified that sex offenders generally minimize their abuse and that vague statements by an accused sex offender such as, AIf my child said it, you should believe him,@ can be considered an admission of guilt.

Harvie Basey testified in his own defense. He stated that he was intimidated by Detective Romph and that Romph hurt him by grabbing his calf during the interview. He denied abusing J.B. and said that his admissions in the interview were the result of Romph=s intimidation. Detective Romph testified on rebuttal that he did not threaten Basey or grab his leg.

**Discussion**

4

In this appeal, Basey raises a claim of ineffective assistance of counsel challenging his attorney=s performance at both the guilt or innocence phase of the trial and sentencing.  Specifically, he contends that his counsel was ineffective because he:

! failed to object to the admission of statements of J.B. through the testimony of Dunlap, a second outcry witness;

! failed to object to the introduction of extraneous sexual offenses through the testimony of Dunlap;

! failed to object to the admission of hearsay statements of Kovach through the testimony of Dunlap;

! introduced evidence that Basey had physically abused J.B.;

! failed to move forward on a hearing on the admissibility of Basey=s confession despite the fact that the hearing had been granted;

! failed to object to the introduction of Basey=s confession into evidence;

! opened the door to testimony regarding a Atruth test@ performed during Basey=s interrogation;

! failed to object to bolstering by the detective who took Basey=s confession;

! failed to object to the detective=s opinion testimony that Basey had not been truthful;

! failed to object to the qualifications of the State=s medical witness;

! failed to object to bolstering by the State=s expert on sexual abuse;

! failed to object to the State=s improper closing argument;

! conceded guilt in his closing argument; and

**!** failed to object to the use of Basey=s prior plea of no contest to sexual assault to enhance the sentence to life in prison.

We measure claims of ineffective assistance of counsel regarding an attorney=s performance at both phases of a criminal trial against the standard set forth by the United States Supreme Court in *Strickland v. Washington*. *See* 466 U.S. 668 (1984); *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney=s performance was deficient, and if that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney=s performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. We find the deficient performance prejudicial when, but for the attorney=s unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Absent both showings, we cannot conclude that there has been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson*, 9 S.W.3d at 813.

In determining whether an attorney=s performance was deficient, we apply a strong presumption that the attorney=s conduct was within the range of reasonable professional assistance. *Id*. at 814. We do not speculate about an attorney=s strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.CAustin 2000, no pet.); *see also Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999) (courts not

6

Arequired to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all@). We review the effectiveness of counsel in light of the totality of the representation and particular circumstances of each case. *Thompson*, 9 S.W.3d at 813.

A[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.@ *Id*. at 814 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). The appellant bears the burden of overcoming the presumption of reasonable attorney performance and is required to prove by a preponderance of the evidence that his counsel was ineffective. *Blevins*, 18 S.W.3d at 271; *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.CAustin 1998, no pet.). Therefore, the appellant must produce a record from which we may discern that his attorney=s performance was not based on sound trial strategy. *Blevins*, 18 S.W.3d at 271. We recognize that this burden is difficult to meet on direct appeal. In the majority of cases, the record on direct appeal is simply underdeveloped and cannot adequately reflect the failing of trial counsel. *Thompson*, 9 S.W.3d at 813-14. Where, as in this case, the errors of counsel complained of are primarily those of Aomission de hors rather than commission revealed in the trial record, collateral attack may be . . . the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record.@ *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998).

The record before us contains no evidence of the strategy behind trial counsel=s actions or omissions. Although Basey filed a motion for new trial alleging ineffective assistance of counsel, the motion

7

did not contain any affidavit or other evidence regarding trial counsel=s strategy. A hearing was not held, and the motion was overruled by operation of law. This case does not prove to be one of the rare exceptions where the record on direct appeal is sufficiently developed to prove ineffective assistance of counsel. Because, on this record, Basey cannot overcome the strong presumption that trial counsel=s performance was reasonable, we overrule his issues and affirm the district court=s judgment.[1]

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: February 20, 2004

Do Not Publish

---

[1] Basey=s claims of ineffective assistance of counsel are not completely foreclosed by our decision. The general rule forbidding an application for a writ of habeas corpus based on issues raised on direct appeal does not apply where the appellate court denies a claim of ineffective assistance of counsel based on the inadequacy of the record on direct appeal. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 272 n.8 (Tex. App.CAustin 2000, no pet.).