TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00650-CR






Harvey Basey, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 9-02-4157, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 A jury convicted Harvey Basey of aggravated sexual assault of a child and indecency
with a child by contact. Tex. Pen. Code Ann. §§ 22.021(a)(1)(B)(i) (West Supp 2004), 21.11(a)(1)
(West 2003). The court assessed punishment at life in prison for the charge of aggravated sexual
assault and 20 years for the indecency charge, to run concurrently. Basey appeals both the conviction
and sentence, contending that he was denied the effective assistance of counsel. We will affirm the
judgment.


Factual Background


 Basey was convicted of two charges of sexual misconduct against his four-year-old
son J.B. At the time of the crime, Basey was married to J.B.'s mother, Michelle Kovach. The two
had five children living with them, including J.B. The family lived in Austin until December 1999,
when they moved to Ohio. J.B. reported the sexual abuse to his mother in June 2000, after she asked
him if anybody had been "messing" with him. Kovach testified that she asked him this question
because there had been a lot of abuse in the family. Kovach stated that J.B. initially said his cousin
John had messed with him. When Kovach asked if there was anyone else, J.B. responded, "Daddy
said if I tell you, I will get into trouble." Kovach then testified that J.B. admitted that Basey had
"messed" with him. J.B. informed her that Basey had put his penis in J.B.'s butt and that Basey had
touched J.B.'s penis. 

 The following day Kovach took J.B. to the Department of Human Services where he
was interviewed by social worker Patricia Dunlap. The interview was monitored through a double
glass window by Kovach and Detective James Romph of the Geauga County Ohio Sheriff's Office. 
Dunlap testified that she first determined in the interview that J.B. was capable of distinguishing
between the truth and a lie and then asked J.B. what his father had done to him. Dunlap testified that
J.B. reported that his father placed a straw where he pees and that it really hurt. J.B. told her this
happened at least eight times. He asked his father to stop, but his father responded, "I'm your father
and I can do what I want." Dunlap testified that J.B. also reported there was oral sex at least two
times and that his father inserted his penis into J.B.'s rectum. J.B. reported that his father told him
to pull down his pants and touch his ankles and that his father was wearing his clothes, but dropped
his pants around his ankles when the penetration occurred. J.B. told Duncan that the abuse occurred
at Grandma Basey's house in Texas. It was established during trial that Grandma Basey is Basey's
mother who resides in Travis County.

 J.B. testified at Basey's trial, outside the presence of the defendant via closed circuit
television. He was six years old at the time of his testimony. He testified that he remembered telling
his mother that his dad was doing bad things to him and that his dad told him not to tell anybody. 
He said that the bad things happened in his room at Grandma Basey's house. J.B. testified that the
bad things his father did to him did not hurt. He denied that anything happened with a straw and
only agreed that his dad touched his private parts with his hands on one occasion. On cross-
examination, J.B. agreed that his father had spanked him and hit him with a belt.

 Following J.B.'s interview with Dunlap at the Department of Human Services,
Detective Romph went to the Baseys' home and spoke with Basey. Romph testified that it appeared
that Basey was packing his bags in order to leave. Basey agreed to go with Romph to the police
station to talk. Once at the police station, Romph conducted a videotaped interrogation of Basey. 
A videotape of the entire interrogation was ultimately introduced at trial. In the video, Basey initially
denied having abused J.B. and agreed to take a "truth verification test." Romph administered the test
on his laptop computer and informed Basey that the test showed he was lying. After further
interrogation, Basey admitted to the "straw incident," placing the straw into the opening of J.B.'s
penis and blowing through it. Basey stated throughout the interview that if J.B. said that he had done
something to him, then he would believe J.B.. Basey also repeatedly admitted that he had made a
mistake and that he needed treatment or counseling.

 J.B.'s family doctor in Ohio, Carrol Noall, testified that she examined J.B. soon after
the abuse was reported. Noall testified that J.B.'s mother reported the abuse and that J.B. was having
difficulty with loss of urine and stool control. She testified that J.B. became very frightened and wet
is pants when she examined his genital area. Because of the report of abuse, Noall examined J.B.'s
rectal area. She testified that she saw a triangular shaped scar going into the rectal area and that the
shape of the scar was indicative of penetration. There was a sexually transmitted wart at the corner
of the scar. Noall explained that the scar and wart were consistent with penetration by an adult penis. 
 Vivian Lewis-Heine, an expert in the treatment of sex offenders and victims of abuse,
testified generally regarding the characteristics of sex offenders and abuse and answered hypothetical
questions based on the facts of the case. She testified that a delay in reporting sexual abuse was
normal and that details of the abuse like those provided by J.B. indicate that the report was reliable. 
She also testified that sex offenders generally minimize their abuse and that vague statements by an
accused sex offender such as, "If my child said it, you should believe him," can be considered an
admission of guilt.

 Harvie Basey testified in his own defense. He stated that he was intimidated by
Detective Romph and that Romph hurt him by grabbing his calf during the interview. He denied
abusing J.B. and said that his admissions in the interview were the result of Romph's intimidation.
Detective Romph testified on rebuttal that he did not threaten Basey or grab his leg.


Discussion


 In this appeal, Basey raises a claim of ineffective assistance of counsel challenging
his attorney's performance at both the guilt or innocence phase of the trial and sentencing. 
Specifically, he contends that his counsel was ineffective because he:

 failed to object to the admission of statements of J.B. through the testimony of
Dunlap, a second outcry witness;



 failed to object to the introduction of extraneous sexual offenses through the
testimony of Dunlap;

 failed to object to the admission of hearsay statements of Kovach through the
testimony of Dunlap; 

 introduced evidence that Basey had physically abused J.B.;

 failed to move forward on a hearing on the admissibility of Basey's confession
despite the fact that the hearing had been granted;

 failed to object to the introduction of Basey's confession into evidence;

 opened the door to testimony regarding a "truth test" performed during Basey's
interrogation;

 failed to object to bolstering by the detective who took Basey's confession;

 failed to object to the detective's opinion testimony that Basey had not been
truthful;

 failed to object to the qualifications of the State's medical witness;

 failed to object to bolstering by the State's expert on sexual abuse;

 failed to object to the State's improper closing argument; 

 conceded guilt in his closing argument; and

 failed to object to the use of Basey's prior plea of no contest to sexual assault to
enhance the sentence to life in prison. 




 We measure claims of ineffective assistance of counsel regarding an attorney's
performance at both phases of a criminal trial against the standard set forth by the United States
Supreme Court in Strickland v. Washington. See 466 U.S. 668 (1984); Hernandez v. State, 988
S.W.2d 770 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we
must determine whether an attorney's performance was deficient, and if that deficiency prejudiced
the defense. Strickland, 466 U.S. at 687; Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). An attorney's performance is deficient if it falls below an objective standard of
reasonableness. Strickland, 466 U.S. at 688; Thompson, 9 S.W.3d at 812. We find the deficient
performance prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable
probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at
694; Thompson, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812. Absent both
showings, we cannot conclude that there has been a breakdown in the adversarial process that
renders the result of a trial unreliable. Thompson, 9 S.W.3d at 813.

 In determining whether an attorney's performance was deficient, we apply a strong
presumption that the attorney's conduct was within the range of reasonable professional assistance. 
Id. at 814. We do not speculate about an attorney's strategy. Blevins v. State, 18 S.W.3d 266, 271
(Tex. App.--Austin 2000, no pet.); see also Moore v. Johnson, 194 F.3d 586, 604 (5th Cir. 1999)
(courts not "required to condone unreasonable decisions parading under the umbrella of strategy, or
to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that
counsel made no strategic decision at all"). We review the effectiveness of counsel in light of the
totality of the representation and particular circumstances of each case. Thompson, 9 S.W.3d at 813. 

 "[A]ny allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness." Id. at 814 (citing McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). The appellant bears the burden of
overcoming the presumption of reasonable attorney performance and is required to prove by a
preponderance of the evidence that his counsel was ineffective. Blevins, 18 S.W.3d at 271; Mayhue
v. State, 969 S.W.2d 503, 511 (Tex. App.--Austin 1998, no pet.). Therefore, the appellant must
produce a record from which we may discern that his attorney's performance was not based on sound
trial strategy. Blevins, 18 S.W.3d at 271. We recognize that this burden is difficult to meet on direct
appeal. In the majority of cases, the record on direct appeal is simply underdeveloped and cannot
adequately reflect the failing of trial counsel. Thompson, 9 S.W.3d at 813-14. Where, as in this
case, the errors of counsel complained of are primarily those of "omission de hors rather than
commission revealed in the trial record, collateral attack may be . . . the vehicle by which a thorough
and detailed examination of alleged ineffectiveness may be developed and spread upon a record." 
Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998). 

 The record before us contains no evidence of the strategy behind trial counsel's
actions or omissions. Although Basey filed a motion for new trial alleging ineffective assistance of
counsel, the motion did not contain any affidavit or other evidence regarding trial counsel's strategy. 
A hearing was not held, and the motion was overruled by operation of law. This case does not prove
to be one of the rare exceptions where the record on direct appeal is sufficiently developed to prove
ineffective assistance of counsel. Because, on this record, Basey cannot overcome the strong
presumption that trial counsel's performance was reasonable, we overrule his issues and affirm the
district court's judgment. (1) 



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: February 20, 2004

Do Not Publish







1. Basey's claims of ineffective assistance of counsel are not completely foreclosed by our
decision. The general rule forbidding an application for a writ of habeas corpus based on issues
raised on direct appeal does not apply where the appellate court denies a claim of ineffective
assistance of counsel based on the inadequacy of the record on direct appeal. See Thompson v. State,
9 S.W.3d 808, 814 (Tex. Crim. App. 1999); Blevins v. State, 18 S.W.3d 266, 272 n.8 (Tex.
App.--Austin 2000, no pet.).